KLIEBERT, Judge.
Charles E. Richards, Jr., Stephen A. Schmedtje, Jr., and Charles Trufant (appellants) brought this devolutive appeal from a judgment in favor of Consolidated Companies, Inc. (appellee) and against appellants as guarantors of a debt of RST Enterprises, Inc. (RST) in the amount of $42,-046.30 together with legal interest from July 1,1982, attorney fees of $5,000.00, and all costs.
On appeal appellants contend the agreement under which they were cast in judgment was invalid because it was executed in connection with a pre-petition reorganization plan, as authorized under the Federal Bankruptcy Statute, which did not go into effect because of a condition precedent (not approved by a requisite number of creditors) and could not be put into effect because it favored one creditor over the others. RST Enterprises, Inc. has not appealed.[1] Consolidated Companies answered the appeal requesting modification of the judgment to remove RST as a judgment debtor and to provide for interest from January 1, 1985 in accordance with the pre-trial stipulations. In opposition to the position urged by the appellants, appel-lee cites the trial judge’s conclusion that the guaranty agreement was a valid contract to resolve the indebtedness owed by RST and hence enforceable notwithstanding RST’s subsequent filing of a petition in bankruptcy. For the reasons hereafter expressed, the judgment of the trial court is amended to give credit for payments by RST and to eliminate RST as a judgment debtor and, as amended, affirmed.
RST, a Louisiana corporation, was incorporated in the late 1970’s for the purpose of acquiring local franchises of Wuv’s International, a fast-food restaurant chain. Appellants Richards, Trufant and Schmedtje were majority stockholders, officers, and directors of RST, which operated four fast-food outlets. RST was not profitable and developed financial problems. On May 31, 1982 Richards, in his capacity as president of RST, sent a letter to the corporation’s unsecured creditors informing them RST was faced with severe financial difficulties, having incurred liabilities of $250,000.00 in trade debts and $600,000.00 in loans from stockholders. Richards averred forced dissolution and liquidation *1189 of assets would produce unsatisfactory results for unsecured creditors after costs and a $250,000.00 mortgage were satisfied. His letter set out the following proposal to the general creditors:
<<*****#*****>!«*
Each unsecured creditor will be paid one half of the total amount due. This amount will be paid in semi-monthly installments on the first and fifteenth of each month, beginning July 1, 1982. The payments will also include interest at the rate of twelve percent per annum on the agreed upon amount. The payments will, in accordance with the arrangements made for operation of the restuar-ants (sic), escalate every three months for the first nine months, and remain level thereafter. At no time, however, should the amount paid to the creditors be less than $3,000.00 per month. The payment levels, which can reasonably be expected to be met, are: $3,000.00 per month for the first three months; $4,000.00 per month for the next three months, $5,000.00 per month for the next three months, and $6,000.00 per month thereafter. No creditor will have the right to bring suit on the obligation to him for a period of two and one half years, at which time all of these debts should be paid, and during which time the corporate principals will receive no payment of the obligations to them. Should any creditor not be paid in full by January 1, 1985, he may then sue to recover the agreed upon deficit balance plus the 12% interest. No assets will be sold, yielding a net proceeds in excess of $1,000.00, excepting that such net proceeds shall be reserved against, and only used for, payment to the unsecured creditors pursuant to this plan.”
Attached to the letter were two copies of an acceptance form for execution by the creditors, providing as follows:
“Gentlemen:
We accept your offer to resolve the debt to us from the Wuv’s restaurants as set forth in your proposal dated May 31, 1982. We acknowledge that the full amount due us is $_, and that we will accept payment of one half of that amount, plus twelve per cent interest per annum from July 1, 1982 until paid, in full settlement of all debt to us for goods or services furnished by us to the Wuv’s restaurants in Louisiana, through May 31, 1982.
We understand that payments are to be made on the first and fifteenth days of each month, beginning July 1, 1982, and that each payment will include interest on the outstanding balance. We further understand that we are to be paid ratably with other unsecured creditors, and that we will be furnished with a statement of all of the debts, showing our pro rata portion thereof, which will be the percentage paid to us of each payment made to the creditors.
We agree, in furtherance of this plan to the benefit of ourselves and other creditors, that the obligation to us will not mature until January 1, 1985, and that we have no cause or right of action until that time. In the event, however, that any of your assets are sold, resulting in a net proceeds in excess of $1,000.00, such net proceeds shall be reserved against, and only used for, payment, under your above referenced plan, to us and the other creditors.
We also enter into this agreement on the condition that, should, for whatever reason, you enter into dissolution proceedings prior to July 1, 1983, we will claim through such proceedings the full amount due prior to our acceptance of your plan, less any amounts theretofore paid.
Dated as of the First day of June, 1982.
(Name of Creditor)
By: -
(Name and Title)
Agreed and accepted with stated amount correct.
RST Enterprises, Inc.
*1190 By: - Charles E. Richards, Jr. President”
Consolidated Companies, Inc., d/b/a Gerde Institutional Food Service, was the major unsecured creditor of RST, supplying frozen foods, canned and packaged goods, and cleaning supplies. As of May 31, 1982 the balance due on RST’s account was $84,092.60. Attorney Hamilton J. Chauvin, Executive Vice President, Secretary and General Accountant of Consolidated Companies, accepted RST’s proposal subject to the condition that Richards, Schmedtje and Trufant personally guarantee the indebtedness. The following clause was added to the acceptance form signed by the parties:
“We do severally and individually guarantee the above obligation of RST Enterprises, Inc., to pay $42,046.30 plus interest, to Consolidated Companies, Inc., d/b/a Gerde Institutional Food Service, and do each obligate ourselves to pay one third of any amount thereof remaining unpaid as of January 1, 1985.
Charles E. Richards, Jr.
Stephen A. Schmedtje, Jr.
Charles R. Trufant”
In a letter dated June 23, 1982 Trufant, in his capacity as Vice-President of RST, informed creditors the payment plan had been accepted by over one-half of the unsecured creditors, representing approximately 90% of the unsecured trade debt, and therefore the remaining creditors could be forced to accept the plan through legal proceedings. Further, the letter stated “We shall, in view of having the requisite approval, proceed to make payments, in accordance with the plan on July 1, 1982.” Payments pursuant to the plan commenced on July 1, 1982, and by letter dated July 6, 1982 RST reported twenty-five creditors with accounts less than $300.00 had been paid. On July 15, 1982 Consolidated Companies received a check for $444.23 together with a cover letter explaining the check represented the first regular payment pursuant to the plan. In all correspondence RST urged creditors who had not accepted the plan to do so, as the requisite voluntary acceptance had been obtained and refusal to accept would only result in additional legal expenses to no one’s benefit.
However, by letter dated July 23, 1982 RST informed all creditors that the guaranties signed in favor of Consolidated Companies were “made without benefit of legal counsel,” and further rendered the entire plan invalid because one creditor was favored over all others; hence, the acceptances were not binding and non-consenting creditors could not be forced to accept the plan. RST closed by stating “... we are at present without a plan, none of you are bound by your acceptances ... and the guarantee of the individuals to Gerde [Consolidated] is void. All payments heretofore made in accordance with the plan simply become payments on account.”
RST made no further payments and on November 2, 1982 Consolidated filed a petition in the 24th Judicial District Court seeking judgment against RST, Richards, Schmedtje and Trufant in the amount of $42,046.30 together with costs, interest and attorney fees. Six days thereafter RST filed a voluntary petition in the United States District Court for the Eastern District of Louisiana seeking protection from creditors under Chapter 11 of Title 11 of the United States Code, and on November 23, 1982 a Federal Bankruptcy judge stayed all judicial proceedings against RST.
Counsel for the appellants and appellee entered into a stipulation in which the trial which was originally set for May 1984 was continued to January 1985. It was also agreed appellants waived any and all defenses, claims, objections, or exceptions concerning the institution of the suit prior to January 1, 1985 and in the event appel-lees were successful judicial interest would not commence to run until January 1, 1985. After a hearing on June 10, 1985 judgment was rendered on August 9, 1985 in favor of Consolidated Companies and against RST, Richards, Schmedtje and Trufant in the *1191 amount of $42,046.30 together with interest at the rate of 12% per annum from July 1, 1982, for attorney fees of $5,000.00, and all costs of the suit. In his reasons for judgment the trial court noted:
“The court finds that the defendants made an offer pursuant to the June 1, 1982 agreement to pay the sum of $46,-046.30 [sic $42,046.30]. This offer was accepted by the plaintiff on the condition that the defendants, Charles E. Richards, Jr., Stephen A. Schmedtje, Jr., and Charles R. Trufant personally guarantee the agreement. These three defendants personally signed the agreement.
Under the June 1, 1982 agreement, the plaintiff was to be paid $46,046.30 (sic), which is one-half of the total amount due, commencing on July 1, 1982. On July 15, 1982, the defendants made a payment of $444.23, pursuant to the agreement, to the plaintiff. No additional payments were made the defendants.
The court finds that this payment of $444.23 was a ratification of the defendant’s offer to pay some of the indebtedness owed by RST to Consolidated. Since the defendants made this payment, further ratifying the agreement, and there is no language in the agreement regarding any other conditional terms which may alter the defendants’ obligation to make payment, then the June 1, 1982 agreement is upheld, and RST, as well as the defendants Richards, Schmedtje, and Trufant are liable and obligated to pay the amount owed the plaintiff under the agreement.”
The appellants contend the trial court erred in finding a valid guaranty agreement exists between appellee and appellants. In support thereof counsel first argues the appellants’ actions constituted “a solicitation of a pre-petition plan of reorganization” which is null and void in that it fails to disclose adequate information as required under 11 U.S.C. § 1125(a)(1) and it favors one creditor over the others. Counsel further argues consent to the principal and guaranty agreements was vitiated by failure of the principal cause or motive; i.e., acceptance of the plan by the requisite number of creditors.
In our view appellants’ characterization of RST’s proposal contained in the letter of May 31, 1982 as “a pre-petition solicitation” authorized under 11 U.S.C. § 1126(b) and Bankruptcy Rule 3018(b), 11 U.S.C.A. has no basis in fact. The letter did not indicate the accompanying form was to serve as a ballot for accepting or rejecting a voluntary reorganization plan, nor were the formal requirements for such a ballot met. See Official Bankruptcy Form 30, 11 U.S.C.A. None of the correspondence sent to creditors by RST referred to the proposal as a “pre-petition solicitation.” The clear implication of the form and subsequent correspondence was that the proposal was intended to avoid reorganization proceedings rather than facilitate them. Thus, as far as the documents show, the acceptance form and accompanying letter were simply a solicitation for the remission of a portion of the debts pursuant to La.C.C. art. 3094[2] rather than a pre-petition solicitation for a reorganization under the Federal Bankruptcy Statute. Richards himself testified he understood the proposal to be a voluntary plan that “had to be accepted by all of the creditors ... but ... if we had [two-thirds] ... who accepted, we could then force a plan by going through a Chapter-Eleven Voluntary Bankruptcy proceedings.” For these reasons we do not accept appellants’ contention their actions constituted a “pre-petition solicitation” of a reorganization plan and hence invalid because it failed to furnish adequate information and favored one creditor over others.
Appellants next argue appellee knew the principal cause or motive for RST’s “pre- *1192 petition solicitation” was to effectuate a reorganization plan which under the Bankruptcy Statute had to be accepted by the requisite number of creditors. Since the necessary acceptances were not forthcoming, counsel argues the plan was ineffective and null due to failure of the principal cause or motive and therefore the guarantees, being accessory obligations, were unenforceable. In related arguments appellants contend approval of the plan by a majority of RST’s creditors was a condition precedent to the validity of the guaranty and that the principal cause for signing the guaranty was effectuation of a pre-petition reorganization plan, the failure of which invalidated the guaranty agreement due to failure of the principal cause. We do not agree.
The trial judge expressly found, and as may be noted from the forms heretofore quoted, no conditions as to acceptance by other creditors were incorporated in the acceptance form and/or guaranty clause. As noted by appellee, RST and appellants drafted the documents, yet failed to incorporate the argued-for suspensive condition in the documents. Parol evidence is not offered to vary the terms of the written instrument, but only to show the instrument does not express the true intent or agreement of the parties. Thieneman v. Kahn, 433 So.2d 761 (La.App. 5th Cir.1983) writ denied 440 So.2d 731 (La.1983).
Appellants correctly note that error in motive cannot invalidate a contract unless the error relates to a principal motive for the contract and the other party was aware of the principal motive. Former La.C.C. arts. 1825, 1826;[3] Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 (La.1979). Whenever the motive is apparent, although not made an express condition, if the error bears on the motive, the contract is void. La.C.C. art. 1827;[4] Clover Contractors v. James H. Jones-1980, 453 So.2d 983 (La.App. 4th Cir.1984) writ denied 459 So.2d 540 (La.1984).
So far as the acceptance form/guaranty reveals, the principal motive for the plan was stabilization of RST’s financial position through partial remission of debts. Nothing in the document indicates a particular number of creditors must participate in the plan if Consolidated’s acceptance was to be effective. Had the form been intended as a true pre-petition solicitation ballot, it no doubt would have contained language conveying the information somewhat similar to that contained in a standard ballot form, i.e.:
“The plan referred to in this ballot can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interest in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it. To have your vote count you must complete and return this ballot.”
Neither the proposal, acceptance form nor guaranty clause indicate acceptance of the plan by a specific number of creditors was a principal cause or motive for the contract.
Appellants argue Hamilton Chauvin’s testimony in deposition clearly indicates Consolidated was aware the principal motive behind both the agreement and the guaranty was acceptance “by the requisite number of its creditors,” apparently referring to the following excerpt:[5]
“Q. And you understand that unless some given number of creditors other than Gerde accepted this that there would be no proposal, no plan ... not resulting guarantee by [Ap *1193 pellants]; but you didn’t know exactly what the number was?
A. That’s true.”
However, when confronted with the statement at trial, Chauvin explained he had misunderstood the question and that it was not his understanding acceptance by other creditors was necessary, although he realized RST desired that other creditors accept. Chauvin testified debtors frequently made unilateral agreements with individual creditors and that, while he was aware the proposal had been submitted to all creditors, it was not characterized as a voluntary or involuntary plan of reorganization. Chauvin stated his understanding was appellants unconditionally guaranteed to pay $42,046.30 in the event RST failed to do so.
The documents themselves do not set forth any conditions precedent to the validity of the principal obligation or the guarantees, and the trial judge was obviously unconvinced by the parole evidence offered by appellants in an attempt to show conditions precedent were intended. We cannot say the trial judge was manifestly erroneous in determining failure of a principal cause or motive known to Consolidated was not established. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
However, we do note that in computing the outstanding debt the trial judge failed to credit the $444.23 payment made by RST on July 15, 1982. Thus, we amend the judgment to reflect a credit in this amount and, as amended, affirm the judgment in favor of Consolidated and against appellants in the correct amount of $41,602.07.
Appellee, in answer to the appeal, requests a modification of the judgment as against RST, which has not appealed. Appellants (who are stockholders of RST and whose attorney represented RST and appellants in the trial court) make no objection; rather, they assert in brief that the judgment against RST has already been vacated by the trial court.[6] Since RST did not appeal, ordinarily we would not alter the judgment rendered against it (See Code of Civil Procedure art. 2133). Here, however, the judgment was rendered against RST subsequent to the filing of a petition in bankruptcy and in derogation of a federal stay order. Evidence of the filing of the petition and the stay order is contained in the record before us. Since the judgment against RST is an absolute nullity apparent on the face of the record, we vacate it. See Fouchi v. Fouchi, 442 So.2d 506 (La.App. 5th Cir.1983) writ denied 445 So.2d 1235 (La.1984).
Appellee further requests we amend the judgment to eliminate the award of judicial interest prior to January 1, 1985. This request is based on a pretrial stipulation which is included in the record. In the stipulation the parties agreed in the event plaintiff was successful interest was to commence January 1, 1985 and run until paid. In light of the stipulation between the parties, we amend that portion of the judgment awarding interest from July 1, 1982 to reflect that interest shall be awarded from January 1, 1985 until paid.
For the foregoing reasons the judgment of the trial court is amended so as to cast Charles E. Richards, Jr., Stephen A. Schmedtje, Jr., and Charles R. Trufant in judgment in favor of Consolidated Companies, Inc. in the amount of $41,602.07, plus interest at the rate of 12% per annum from January 1, 1985 until paid together with attorney fees of $5,000.00, and all costs, and as amended is affirmed. Each party is to bear his own cost of the appeal.
AMENDED AND, AS AMENDED, AFFIRMED.

. Although appellee in answer to the appeal refers to RST Enterprises as an appellant, the corporation is not named in the appellants' motion for appeal. See discussion, infra. Appellants in brief aver the judgment has been amended to exclude RST as a party cast.

. La.C.C. art. 3094 provides:
"If the debtor has solicited the remission of a portion of his debts, the creditors who grant it are alone bound, and this discharge does not in any way affect the others.
Those creditors even, who have consented on condition that the others should also accede to the demands of the debtor, are not bound, if a single one refuse.”

. These articles were amended and re-enacted by Acts 1984 No. 331 and have been renumbered as C.C. arts. 1949-1950.

. See now La.C.C. art. 1950.

.Only pages 12, 13, 14 and 22 of Chauvin’s deposition were admitted into evidence and are properly before the court.

. Further, during oral argument all counsel agreed and stipulated RST was not a party defendant at the trial and was erroneously cast in judgment.