92 So.2d 739 (1957)
Chester Warren POWELL, Plaintiff-Appellant,
v.
J. Ed COX, Defendant-Appellee.
No. 8576.
Court of Appeal of Louisiana, Second Circuit.
February 5, 1957.
Robert H. Wimberly, Arcadia, for appellant.
Goff & Caskey, Arcadia, for appellee.
AYRES, Judge.
This is a contest between a lessee and a successor to his lessor as to the title to certain improvements, such as a cotton gin, machinery and buildings housing the same, erected by the lessee of his own materials and through his own labor on a tract of land consisting of approximately one acre. Aaron A. Powell, plaintiff's father and *740 ancestor in title, leased to defendant the aforesaid tract February 26, 1927, on which defendant obligated himself to erect a cotton gin on or before August 15, 1927, to be owned and operated by the defendant as a public gin.
The defendant erected the gin, as per the agreement, at an expenditure of $9,000 and operated the same until about the year 1945, delivering to the lessor the motes or refuse from the gin as the consideration for said lease. The discontinuance of the operation of the gin was due to the fact that the community discontinued the growing of cotton in sufficient quantities to permit the gin to be operated profitably.
Plaintiff, as the owner of the land leased by his ancestor in title, instituted this action April 13, 1955, claiming ownership of the aforesaid gin, machinery and the buildings housing the same. On further alleging that the defendant was engaged in demolishing and removing said property from plaintiff's land, plaintiff prayed for and was granted a temporary restraining order prohibiting the defendant from carrying out said activities. In due course, a preliminary injunction was issued, following which the case was tried upon its merits, resulting in a judgment recognizing defendant as the owner of the property in contest and granting him a period of 60 days within which to remove the improvements erected by him from plaintiff's land, and the judgment thereby rejected plaintiff's demands. From the judgment thus rendered, plaintiff has appealed.
Plaintiff predicates his claim upon two premises: (1) That, by the language of the lease, the improvements at the termination of the lease would "revert" to the lessor, his heirs or assigns, that is, to plaintiff herein as the present owner of the property, and, (2) in the alternative, that said improvements have been abandoned by defendant to plaintiff.
Plaintiff's first contention is based upon the following provision of the lease:
"The term of this lease shall be for such time as the said J. Ed Cox, his heirs or assigns, shall use said property for a gin, same to revert to the said lessor, his heirs or assigns, at such time as same may no longer be used for a gin." (Italics ours.)
Our review of the record has served to convince us that plaintiff's first contention is untenable as not being the evident intent and purpose of the parties to the lease. It is elementary that a contract should be interpreted in accordance with the intent of the parties, LSA-C.C. Art. 1945; that the words of the contract are to be understood in their common and usual signification, LSA-C.C. Art. 1946, but where there is doubt as to the true sense of the words of the contract they may be explained by considering them in relation to the context and to the immediate subject-matter of the contract. LSA-C.C. Art. 1948.
In applying these well known rules for the construction of contracts, it is evident that in the above quoted provision of the lease, the word "same" has reference to and for its antecedent not the word "gin" or the buildings or improvements erected by defendant but the property leased by Aaron A. Powell to the defendant, which is the one acre of land, meaning, obviously, that the land theretofore leased and which, during the term of the lease, was in the possession of the lessor, would "revert" to the lessor, his heirs or assigns, rather than that the possession and right of use would revert to the lessor or his assigns. We are further confirmed in this opinion for the reason that the word "revert" means to turn back that which has been received. The legal or technical signification of the word is for the property to be returned or to go back to a person who formerly owned or possessed it but who had parted with the possession or title to it by creating in another a right, title or possession. Vol. 37a Words and Phrases, Revert, page 304 et seq. The improvements involved were never owned by either plaintiff or his ancestor *741 in title nor were they conveyed by either of them to defendant. Therefore, it would be most inexact to say that these improvements would "be turned back", or would "revert", to plaintiff-lessor.
As we interpret the controversial provision of the contract of lease, it appears to us that the provision simply means that, when the leased property is no longer used as a gin, the use, occupancy and possession of such land shall be returned to the lessor, his heirs or assigns without any intent or contemplation that the buildings and the gin erected by the lessor would be included.
Neither are we impressed there is merit in plaintiff's second contention. There is no provision in the lease providing, on its termination, that the lessor, his heirs or assigns, would become the owner or owners of the improvements erected by the lessee on the leased property. LSA-C.C. Art 2726 provides:
"The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it.
"But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price."
We are not informed by the record that the improvements were made with lime or cement.
Nevertheless, by the lapse of time during which defendant has not removed the improvements, plaintiff contends that he has abandoned the improvements and has no further right, title or claim thereto. The lease is silent as to any time within which it was contemplated that the improvements might be removed from the leased premises. However, no demand has been shown to have been made for such removal. It was only when defendant sought to remove the improvements that plaintiff intervened and asserted ownership. There was no specific showing of any intent of the defendant to relinquish or abandon the property other than mere inaction on his part. But, if there is a presumption on that account that defendant intended to abandon said property, such presumption has been conclusively rebutted by the fact of defendant's engaging in an effort to remove the property from the premises. Defendant began to remove this property before plaintiff ever asserted or claimed title thereto.
"Abandonment" of property or of a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession and control, and without vesting ownership in any other person. For instance, 1 C.J.S. Abandonment, § 1, p. 4, in part, reads:
"The term `abandonment,' in its application to property and rights, with which this treatise is concerned, is a word which has acquired a technical meaning, * * *. `Abandonment' * * * may be defined as an absolute relinquishment; the relinquishment or renunciation of a right, or of property; a giving up of something to which one is entitled; the act of forsaking or leaving; a total desertion.
"More specifically, it is the intentional relinquishment of a known right; the relinquishment of a right by the owner thereof without any regard to future possession by himself or any other person, and with the intention to forsake or desert the right; the relinquishment of all title, possession, or claim to or of property, or virtually throwing it away; the voluntary relinquishment of a thing by its owner with the intention of terminating his ownership, and without vesting ownership in any other person; the giving up of a thing absolutely, without reference to any particular person or purpose; the relinquishment of property to which a person is entitled, with no purpose of again claiming it, and without concern as to who may subsequently take possession."
*742 This court held in Donnell v. Gray, La. App., 34 So.2d 648, that the abandonment of property by a tenant to such an extent as to vest title and control in the landlord involves both an act of abandonment and a specific intent to abandon. On a review of that decision by the Supreme Court, doubt was expressed that the facts of the case justified a holding that the lessee's silence, coupled with his failure to remove the equipment over a period of 14 months from defendant's land, constituted an abandonment, the lessee's actions negating any presumption of any intent on his part to abandon the property. 215 La. 497, 41 So.2d 66.
It has been held that the characteristic element of abandonment is voluntary relinquishment. New Orleans Bank & Trust Co. v. City of New Orleans, 176 La. 946, 147 So. 42. Therefore, the intention of the owner is a material factor for consideration. It has also been held that abandonment of property, like the abandonment of a domicile and the acquisition of a new one, is made up of two elements intent and action or inaction. J. A. Bel Lumber Co. v. Stout, 134 La. 987, 1004, 64 So. 881.
In this connection, this court stated in Bickham v. Bussa Oil & Gas Co., Inc., La.App., 152 So. 393, 395:
"To constitute an abandonment of personal property so as to give a third party the right to assume title and control of it, two essential elements must exist. There must be an act of abandonment coupled with the intention to abandon."
The intention of the owner to abandon or not to keep the property any longer is a matter of material importance. LSA-C.C. Art. 3421. The actions of the defendant in claiming the property and in attempting to dismantle and remove it from the leased premises effectively rebut any presumption, if a presumption exists, that the defendant intended to relinquish or abandon the property. Paraphrasing an expression of the Supreme Court in Standard Oil Co. of Louisiana v. Barlow, 141 La. 52, 53, 74 So. 627, it is incredible that any party would erect buildings and install a gin at an expenditure of $9,000 on a one-acre leased lot and intend that such improvements would become the property of the owner of the leased premises when he was no longer able to use said leased property for a gin site. That he did use the property for a gin site for approximately 20 years is of no material importance in this consideration as the conditions necessitating a discontinuance of operations could have as easily arisen the same year, the next, or at any time after the operations began.
The conclusion, therefore, logically follows that plaintiff has failed to sustain his demands on either of the grounds urged by him. Accordingly, finding no manifest error in the judgment appealed, it is affirmed.
Affirmed.