433 So.2d 761 (1983)
Alexander A. THIENEMAN, Jr.
v.
Seligman J. KAHN.
No. 82-CA-191.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 1983.
Rehearing Denied July 15, 1983.
*762 Carl W. Cleveland, Carl W. Cleveland & Associates, New Orleans, for Alexander A. Thieneman, Jr., plaintiff-appellant.
Arthur C. Reuter, Jr., Reuter & Reuter, New Orleans, for Seligman J. Kahn, defendant-appellee.
Before BOUTALL, KLIEBERT and GRISBAUM, JJ.
BOUTALL, Judge.
This case arises out of a suit for damages from breach of a lease. The lessee reconvened to cancel the lease and recover all payments previously paid. From a judgment canceling the lease but denying recovery of past paid rent, the lessor-plaintiff appeals. The lessee has answered, demanding the recovery of said rent.
Alexander Thieneman, Jr., is the owner-builder of a shopping center in Kenner. In August, 1978 Seligman J. Kahn signed a net net lease of space to operate a drugstore in the center. The lease was for five years and rent was due monthly, beginning October 15, 1978.
The drugstore opened sometime in December, 1978 and closed in December, 1979. On December 18, 1979, Thieneman wrote Kahn asking that he reopen the store in accordance with the lease requirement to remain open, and if necessary find an acceptable sublessee; he further called his attention to the lessor's lien and insisted that Kahn refrain from attempts to sell the fixtures and stock. Thieneman next wrote Kahn on March 21, 1980, asking for the March rent and stating that he had agreed to let Kahn keep the store closed while he found a sublessee on condition that payments would be made timely, a similar demand was made on April 7, 1980. From then on matters remained at status quo, with the store closed while a sublessee was being sought and with regular rental payments being made, until October, 1981.
In October Thieneman learned from other tenants that the contents were being moved from Kahn's store. When Thieneman complained, Kahn pleaded with him to let him sell the contents and use the proceeds to pay the rent. Thieneman agreed to work with Kahn a bit longer with the hope that a sublessee could be found. Kahn paid the *763 November rent but on November 23 his attorney wrote Thieneman informing him that the December rental would not be paid, demanding cancellation of the lease, and threatening suit. The grounds stated were that the lessor had not developed the shopping center as promised, with a convenience store and an appropriate sign. On November 25, 1981, Thieneman entered into a written agreement to sell the shopping center to an investor who, according to Thieneman, required that the center be fully rented. When Kahn failed to respond to a further demand for the December rent, Thieneman's attorney notified Kahn's on December 10 that suit would be filed and damages for loss of the sale would be included. On December 16, Thieneman wrote a personal letter to Kahn asking him to pay the moneys owed and remain current, in light of past leniency on the part of Thieneman. In the absence of a reply, Thieneman's counsel gave formal notice of default and filed suit for breach of the lease on January 15, 1982, praying for damages of $207,009.82, including past due and future rent, taxes, insurance, maintenance, utilities, loss of sale of the shopping center, and attorney's fees.
Kahn answered, alleging misrepresentations by the lessor that resulted in error as to the principal cause, which error invalidated the contract; he reconvened for all past due payments under the lease and for purchase of a sign, a total of $71,219.18. Trial was held before a judge, resulting in cancellation of the lease as noted above.
In his Reasons for Judgment the trial judge found that the plaintiff made the following misrepresentations:
"(1) that plaintiff would erect a large pylon sign structure upon which defendant could place a sign advertising his pharmacy,
"(2) that plaintiff would organize and assist in subsidizing a `Grand Opening' of the new shopping center, which would attract business,
"(3) that a bridge was to be built so as to allow direct access to the shopping center from Williams Boulevard, a major thoroughfare in the area, and
"(4) that a `7-Eleven' or similar convenience-type store would operate continually in the shopping center."
The court concluded that because of the geographical position of the shopping center the bridge and the sign were crucial to the drugstore's making a profit. Had Kahn known that these two items could not be constructed because of neighboring residents' protest, he would not have signed the lease. The court found the lease to be null and void because of the lack of consent required by LSA-C.C. art. 2670.
The issues on appeal are: (1) whether parol evidence should have been admitted and if so whether it should be allowed to vary the terms of the lease; (2) whether the evidence showed that error existed and, if so, that the error related to the principal cause; (3) whether the lessee was estopped from asserting unilateral error when he had not complained for 38 months and had agreed to continue paying rent in return for the lessor's permission to remove fixtures and inventory.
Admission of parol evidence.
As to the admission of parol evidence, we find that the trial judge was correct in allowing the defendant to testify on the alleged misrepresentations; however, we disagree with his conclusions from the testimony. Where misrepresentations or fraud are alleged as in the case before us parol evidence is admissible to establish whether or not such allegations are true. Nugent v. Stanley, 336 So.2d 1058 (La.App. 3rd Cir.1976). Parol evidence is also admissible to determine whether a written contract accurately represents a mutual agreement. The court in Valhi, Inc. v. Zapata Corp., 365 So.2d 867 (La.App. 4th Cir.1978), said at 870:
"... Parol evidence is not offered to vary the terms of the written instrument but to show that the writing does not express the true intent or agreement of the parties."
By accepting the defendant's testimony as true and finding that the agreement was *764 based on Kahn's misapprehension as to four conditions, the court wrongly applied parol evidence to vary the terms of the written document.
Error
For an error to be sufficiently grave as to invalidate a contract, the error must relate to the principal motive for the contract and the other party must have been aware of the principal motive. LSA-C.C. art. 1825, 1826; Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 (La.1979).
The record fails to support the court's finding that Thieneman made representations as to four advantages that the shopping center would have but did not, and that Kahn entered into the lease through error, relying upon Thieneman's representations. Thieneman and Kahn each testified.
The only other witness was Edward Martina, Jr., who was subpoenaed by the defendant but released before trial and then called by the plaintiff. Mr. Martina operated a successful cleaning business next to Kahn's drugstore, and testified that the tenants had had a "grand opening" or joint promotion on two occasions, one before and one after Kahn's store closed, contrary to Kahn's complaint that a promised opening was not held. Both Thieneman and Martina testified that the 7-Eleven convenience store was not closed fifteen months, as alleged by Kahn, but for four to six months before a new convenience store opened there; further, that the closing took place after Kahn ceased operating the drugstore.
The court stated in its Reasons for Judgment that Thieneman's representations regarding the sign and the bridge, although not intended to mislead the lessee, were material misrepresentations.
As to the sign, the original drawings of the shopping center showed a sign at its entrance of four to five feet in height. The center's standard lease required the lessor's approval of all individual signs on or above the leased premises, restricting them as to location, but was silent as to a sign at the entrance. Thieneman testified that when several tenants requested a larger sign in front of the shopping center, he agreed to try for city approval to erect tall pylons on which tenants could place individual signs. The subdivision in which the center was located was highly restricted, and the neighbors opposed a large sign. Pressure upon the Kenner city government and the civic association from Thieneman and others, including Martina and Kahn's son, were to no avail. Martina testified that negotiations regarding the sign took place before Kahn opened his store.
The bridge in question was to be built over Duncan Canal between Chateau Boulevard and Williams Boulevard. Kahn first testified that Thieneman had told him the bridge would be built. Kahn also asked Aaron Broussard [mayor of Kenner] about it, who confirmed that the money for it had been appropriated. Kahn then admitted on cross examination that what Thieneman had said was consistent with the information from Broussard. Martina said he understood that the neighbors opposed the increased traffic the bridge would bring and that Thieneman could not have guaranteed to him or to Kahn that the bridge would be built any time soon.
We conclude that at the time of leasing the property, Kahn had not been told that the sign or bridge were certainties. If the sign and bridge were material considerations, Kahn would have had them included in the lease. Page seven of the lease is entitled "Conditions to or Deletions from, Changes to, Standard Lease Form" and lists eight "Special Conditions," which were concessions to the lessee. Although Kahn denied on the witness stand that he was represented by counsel, he did admit that an attorney friend looked it over. As this same attorney acted as notary for the acknowledgment of the lease by the two parties, we discount Kahn's denial of representation in negotiating the lease. Mr. Kahn's financial statement indicated a net worth of over one million dollars, and we find it difficult to believe that he is unsophisticated as to the formation of business agreements. Accordingly, we hold that the written *765 lease represented the terms mutually agreed to by the parties, and there was no lack of consent because of error.
Estoppel
Finding that error sufficient to vitiate the written agreement was not present, we decline to take up the issue of estoppel except to note that it is an affirmative defense which must be pleaded, and the plaintiff failed to raise it in his answer to the reconventional demand. La.C.C.P. art. 1005.
Remedy
The default provision of the lease gives the lessor three options in the event of non-payment of rent within twenty days after receipt of notice of default:
1) to declare automatic forfeiture of the lease; or
2) To enforce performance in any manner provided by law and to reenter and remove all persons from the property, still retaining his remedies for recovery of arrears or breach of covenant; or
3) To resume possession and relet for the remainder of the term at the best rental that can be obtained, the lessee to pay any deficiency.
In addition, the lease recognizes the lessor's lien on the lessee's fixtures and equipment located on the property. No provision is made for recovery of attorney's fees or for acceleration of payments for the remainder of the lease.
Thieneman's petition is entitled "petition for damages for breach of lease" and prays for a judgment of $207,009.82. Damages specified are:

"(a) Loss of rental income and
 reimbursement of
 maintenance, utility,
 property insurance, floor
 insurance and property
 taxes $43,681.00
"(b) Unpaid property taxes 1,328.82
"(c) Damages from loss of
 contract to sell the
 shopping center in which
 the leased premises are
 located 150,000.00
"(d) Attorney's fees 6,000.00"

We hold at the outset that the plaintiff failed to prove his entitlement to damages for the lost sale of the shopping center or for attorney's fees. He produced no evidence other than an agreement to sell that was to expire two days after it was signed, and utterly failed to show that Kahn's default caused the sale to fall through. As attorney's fees are not provided in the written agreement, he may not recover them.
As to the other damages, item (a) includes past due rent from December, 1981 to date of filing suit and all future rentals to become due until the end of the term on October 14, 1983. The plaintiff did not ask for cancellation of the lease; but the lessee did so in his reconventional demand.
The trial judge, in his Reasons for Judgment, stated he found the lease to be null and void, but that the lessee had received benefit and could not recover previously paid rent. As we find that there was no error sufficient to invalidate the contract, the lease was still viable at the time suit was filed. Although the lease contains no acceleration clause under which all future payments would be due immediately, the jurisprudence does allow a lessor to accelerate when the lessee has abandoned the premises. In the case of Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App. 3rd Cir.1974), the court explained at 560:
"In order for there to be an `abandonment' of the leased property by a tenant sufficient to entitle the lessor to recover all future rental payments, two essential elements must be present, namely, an intent to abandon the property and an act of abandonment. Donnell v. Gray, 34 So.2d 648 (La.App. 2 Cir.1948); Powell v. Cox, 92 So.2d 739 (La.App. 2 Cir.1957). `Abandonment' of property or of a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession and control, and without vesting ownership in any other person. Powell v. Cox, supra; New Orleans Bank & Trust Co. v. City of New Orleans, 176 La. 946, 147 So. 42 (1933)...." *766 We find that Kahn's notifying the lessor, Thieneman, that he would no longer pay rent and then vacating the premises constituted an abandonment sufficient to permit acceleration of future rentals.
Accordingly, on the principal demand, we reverse the judgment finding in favor of defendant, Seligman J. Kahn, and dismissing plaintiff's suit against him. Instead, we find in favor of the plaintiff, Alexander A. Thieneman, Jr., and against defendant, Seligman J. Kahn, awarding plaintiff the amount of $38,816.96, which includes all rentals due on the lease from date of December 5, 1981, to October 14, 1983, lessee's share of maintenance and utilities for December, 1981, and lessee's share of real estate taxes for 1981, together with legal interest from date of judicial demand until paid and all costs of these proceedings.
On the reconventional demand, we affirm the judgment in favor of defendant in reconvention, Alexander A. Thieneman, Jr., and against plaintiff in reconvention, Seligman J. Kahn, dismissing the reconventional demand.
Appellee, Seligman J. Kahn, is cast for costs in both courts.
REVERSED IN PART, AFFIRMED IN PART.