653 So.2d 699 (1995)
PELICAN PLUMBING SUPPLY, INC.
v.
J.O.H. CONSTRUCTION CO., INC. and Harold H. Heidingsfelder.
No. 94-CA-991.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 1995.
*700 Steven T. Richard, Metairie, for plaintiff/appellant.
Lawrence D. Rudman, Metairie, for defendant/appellee.
Before GRISBAUM, WICKER and GOTHARD, JJ.
WICKER, Judge.
This appeal arises out of a suit on open account by Pelican Plumbing Supply, Inc. against J.O.H. Construction Co., Inc. and Harold H. Heidingsfelder. Heidingsfelder, the vice president of J.O.H. Construction Co., was made defendant on the basis of a credit agreement which he signed on behalf of the company. The credit agreement contained the following language:[1]
IN CONSIDERATION OF AN OPEN ACCOUNT PRIVILEGE, I HEREBY UNDERSTAND AND AGREE TO THE ABOVE TERMS. SHOULD IT BECOME NECESSARY TO PLACE THIS ACCOUNT FOR COLLECTION I SHALL PERSONALLY OBLIGATE MYSELF AND MY CORPORATION, IF ANY, TO PAY THE ENTIRE AMOUNT DUE INCLUDING SERVICE CHARGES (AS OUTLINED ABOVE TERMS) THIRTY-THREE AND ONE THIRD (331/3) ATTORNEY'S FEES, AND ALL COSTS OF COLLECTION, INCLUDING COURT COSTS.
SIGNED [Harold H. Heidingsfelder] COMPANY J.O.H. Const. Co., Inc.
Heidingsfelder filed an exception of no cause of action on the basis that the contract did not indicate any intention on his part to guaranty individually any indebtedness of J.O.H. Construction. The exception was denied. Pelican then filed a motion for summary judgment. The trial court rendered summary judgment in favor of Pelican against J.O.H. only, in the amount of $10,976.82, with 12% interest per annum from date of last invoice until paid, for all costs, and for attorney's fees in the amount of 33.333% of the principal. Pelican reserved its rights against Heidingsfelder. Subsequently the claim against Heidingsfelder came to trial. Only Heidingsfelder testified. The trial court ruled in favor of Heidingsfelder and against Pelican, dismissing Pelican's suit at its costs. In written reasons for judgment the trial judge found that the signature was made in a representative capacity and therefore led to no personal responsibility of the corporation representative. Pelican has appealed.
Heidingsfelder testified that J.O.H. Construction Co. was incorporated in 1982, with his wife as president, and that his wife was the registered owner of all the stock. He was vice president. J.O.H. was started as a sister company to another company Heidingsfelder owned, Emile H. Babst Company, with which he had been involved since 1964 or '65. When J.O.H. was started, the Babst company had been doing business with Pelican Plumbing Supply for many years without any written credit agreement or guaranty, as far as Heidingsfelder knew. Babst was a union company, but J.O.H. was established to work as a nonunion company in area industrial plants.
By 1988 J.O.H. had established a track record with Pelican Plumbing Supply; Heidingsfelder estimated J.O.H. made purchases totaling $100,000 a year from Pelican. As far as he knew there was no written credit agreement with Pelican prior to 1988. It was J.O.H.'s custom to pay Pelican on a monthly basis. On May 13, 1988 Heidingsfelder's secretary, who was the accountant and bookkeeper for the company, brought him a credit application which she stated they had been asked to fill out.
No one from Pelican ever indicated to him that he would be signing it as a personal guaranty, and there was no reason in his mind in 1988 for him to indemnify any creditor of J.O.H. He signed it only as a credit application and had no intent to obligate himself personally for the debts of J.O.H. He would not have signed it had anyone pointed out to him that it could be interpreted *701 to include his personal guaranty. At the time he signed the credit application J.O.H. Construction was doing quite well financially. J.O.H. was current on its debts under industry standardsthat is, J.O.H. paid when it got paid.
On appeal Pelican contends Heidingsfelder is personally obligated on the account because the wording of the guaranty clause was clear and explicit and there is no indication that he signed only in a representative capacity. Given the clear wording of the contract, Pelican asserts, parol evidence as to Heidingsfelder's intent should not have been admitted.
Heidingsfelder contends he is not personally liable because he had no intention to act as surety for J.O.H. or to bind himself personally for the debts of the corporation. He argues the fact that his signature is followed by the name J.O.H. Construction Co., combined with his testimony regarding his intent, establish that he was acting solely in a representative capacity.
Pelican cites the former version of La.R.S. 10:3-403 of the Commercial Laws, which was effective through December 31, 1993.[2] It stated:
(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.
(2) An authorized representative who signs his own name to any instrument
(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.
(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.
We conclude, however, that this article is not applicable to the document at issue. Former La.R.S. 3-102(e) defined an "instrument" for purposes of the Commercial Laws as "a negotiable instrument." The credit application or credit agreement in this case is not a negotiable instrument because it contains no unconditional promise to pay a sum certain, is payable neither on demand nor at a definite time, and is not payable to order or bearer. (See former La.R.S. 10:3-104.) Accordingly, La.R.S. 10:3-403 does not apply.
Instead, we must look to our codal laws on suretyship.
Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. La.Civ.Code art. 3035. Suretyship must be express and in writing. La.Civ.Code art. 3038. Contracts of suretyship are subject to the same rules of interpretation as contracts in general. Ferrell v. South Central Bell Tel. Co., 403 So.2d 698, 700 (La.1981).
Although parol evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature, in the interest of justice such evidence may be admitted to prove such circumstances as a vice of consent. La.Civ.Code art. 1848. Between the parties to an instrument, parol evidence is admissible to show fraud, mistake, illegality, want or failure of consideration, to explain an ambiguity when such explanation is not inconsistent with the written terms, or to show that the writing is only part of an entire oral contract between the parties. Scafidi v. Johnson, 420 So.2d 1113, 1115 (La.1982).
*702 "The need for such a rule is never so clear than in cases where the contract does not represent the true intent of the parties." Placid Refining Co. v. Privette, 523 So.2d 865, 868 (La.App. 1st Cir.1988), writ denied, 524 So.2d 748 (La.1988). "In interpreting contractual provisions about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms of the agreement." Land and Offshore Co. v. Martin, 469 So.2d 1177, 1181 (La.App. 3rd Cir.1985).
"Where the personal or representative nature of a signature is unclear upon examination of the document, parol evidence is admissible to show the parties' intent." Homer Nat. Bank v. Springlake Farms, 616 So.2d 255, 258 (La.App. 2nd Cir.1993). "The capacity in which a party executes a document is largely a matter of that party's intention as determined from the circumstances surrounding the transaction." American Bank & Tr. v. Wetland Workover, 523 So.2d 942, 945 (La.App. 4th Cir.1988), writs denied, 531 So.2d 282 and 531 So.2d 283 (La.1988).
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When findings are based on determinations regarding credibility of witnesses, as in this case, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Id.
Our careful review of the record in this matter reveals no manifest error in the findings of the trial court. We conclude the defendant Heidingsfelder did not intend to sign in his personal capacity. Accordingly, the judgment dismissing the plaintiff's claim is affirmed. The plaintiff is assessed all costs.
AFFIRMED.
NOTES
[1] The document in question, filed as Exhibit P-1, is missing from the appellate record and cannot be located by the district court. Accordingly, we permitted the parties to file a written joint stipulation to the document's contents.
[2] It has since been replaced by La.R.S. 10:3-402, pursuant to Acts 1992, No. 1133, § 3, eff. Jan. 1, 1994.