880 So.2d 223 (2004)
FIRST SOUTH FARM CREDIT, ACA, Plaintiff-Appellee
v.
GAILLIARD FARMS, INC. and Joseph Patten Brown, Jr., Defendants-Appellants.
No. 38,731-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 2004.
*224 James Willis Berry, for Appellants.
Thomas Wayne Bishop, for Appellee.
Before BROWN, GASKINS, and PEATROSS, JJ.
BROWN, C.J.
Defendant, Joseph Patten Brown, Jr., appeals a judgment finding that he was personally liable, in solido, with Gailliard Farms, Inc. on a promissory note executed on February 24, 2000. We affirm.

Facts
Plaintiff, First South Farm Credit, ACA ("First South"), is the holder of a promissory note dated February 24, 2000, in the sum of $104,200 executed by defendants, Gailliard Farms, Inc. ("Gailliard"), and Joseph Patten Brown, Jr. ("Brown"). Defendants were engaged in farming in East Carroll Parish. Brown is the president of Gailliard. Mike Scott was a loan officer for the First South branch servicing loans made to Gailliard and Brown. Scott is Brown's son-in-law. Scott's wife, who is Brown's daughter, owns 50 percent of Gailliard's stock.
The Gailliard-Brown loan history with First South began in 1994. During this period of time, Scott prepared all of the loan documents and did all of the credit work on the Gailliard-Brown loans, but, because Brown was his father-in-law, Scott's supervisor, Mike Castello, signed all of the loan instruments on behalf of First South. Each year, the parties restructured the indebtedness. As security for the loan, Gailliard granted liens over its farm tools, including tractors and other implements; however, First South failed to reinscribe its security and lost its position to other creditors. Thus, in restructuring the loan in February 2000, First South requested and obtained from Gailliard additional collateral in the form of an assignment of government subsidies, which equaled $20,000 per year.
Brown claims that in return for the subsidies assignment, he was released from personal liability. Brown offered into evidence a copy of a handwritten document dated December 21, 1999, and signed by Brown and Scott which states "assignment of FSA payments and new mortgage on equipment in return for release of personal liability." This was handwritten on plain letter-sized paper. Only Brown and Scott signed. Castello denied any knowledge of the document or such agreement and the loan records at First South contain no such document.
On February 24, 2000, the Gailliard-Brown loan was again restructured. Brown signed the loan documents as president of Gailliard and in an individual capacity. Gailliard defaulted on the loan, and First South sued. At trial, the parties stipulated the indebtedness of Gailliard. The sole issue at trial was the personal liability of Brown. The trial court found that neither Scott nor Castello had the authority to release Brown from liability, and that the February 24, 2000, loan package personally obligated Brown. Defendants appeal the trial court's rulings.

*225 Discussion

Brown claims that he was released from personal liability on December 21, 1999, when he and Scott executed a release and contends that he had no reluctance or reservations about signing the February 24, 2000, loan documents because of this prior agreement to eliminate his personal liability.
Courts are bound to give legal effect to all written contracts according to the true intent of the parties. This intent is to be determined by the words of the contract when these are clear, explicit and lead to no absurd consequences. The meaning and intent of the parties to the written contract in such cases must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. Bonfanti Marine, Inc. v. Clement, 439 So.2d 537 (La.App. 1st Cir.1983). Signatures are not mere ornaments. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983). A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it. Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir.1983).
The February 24, 2000, mortgage package was introduced into evidence, and clearly shows that Brown executed four separate documents two times each; once in his capacity as president of Gailliard, and once individually. According to the testimony of Brenda Watson, a 17-year employee with First South, and the person in charge of maintaining all credit files at the branch in question, Brown was told, prior to executing the February 24, 2000, mortgage package, that he would be personally liable on the debt. The trial court found Watson to be credible. We allow the trial court deference in making credibility determinations, and, seeing no manifest error, we will not disturb this finding.
Brown, by his signature, in his individual capacity, is bound by the four corners of the promissory note. The February 24, 2000, loan package contained the entire agreement. If a previous agreement to release personal liability did exist, the February 24, 2000, mortgage supersedes it. So finding, we do not need to discuss whether the purported, handwritten release from liability signed by Brown and his son-in-law was valid.

Conclusion
We affirm the rulings of the trial court, and tax defendant, Joseph Patten Brown, Jr., with all costs of this appeal.