Judgment rendered November 16, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,778-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

\* \* \* \* \*

745 OLIVE STREET, L.L.C.                    Plaintiff-Appellee

versus

OPTIMAL WELLNESS, LLC                    Defendants-Appellants
AND SREEDEVI
YERRAPRAGADA

\* \* \* \* \*

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 624,305

Honorable Craig Owen Marcotte, Judge

\* \* \* \* \*

THOMAS, SOILEAU, JACKSON                    Counsel for Appellants
& COLE, LLP
By:  Steven E. Soileau
      Alexandra Morgan Harlow

WIENER, WEISS & MADISON, APC                    Counsel for Appellee
By:  Geoffrey D. Westmoreland

\* \* \* \* \*

Before PITMAN, COX, and ROBINSON, JJ.

**ROBINSON, J.**

Plaintiff, 745 Olive Street, LLC ("Olive Street"), sued Defendants, Optimal Wellness, LLC ("Optimal Wellness"), lessor, and Dr. Sreedevi Yerrapragada ("Yerrapragada"), guarantor (collectively, "Defendants"), for breach of a commercial lease due to Optimal Wellness's abandonment of the leased premises, failure to pay rent, and for other amounts accruing and due.

Olive Street moved for summary judgment seeking recovery of damages for unpaid and accelerated rent and attorney fees, plus interest, from Defendants. Defendants argued that Olive Street failed to establish abandonment and was not entitled to accelerated rent because it retook possession of the leased premises without first providing proper notice to Optimal Wellness. Olive Street also argued that Yerrapragada was not personally bound under the Guaranty because it was invalid.

The trial court granted Olive Street's motion and a written judgment was signed on March 4, 2021, declaring that Defendants, in solido, owe Olive Street the full amount of unpaid and accelerated rent, together with interest thereon at the legal rate from the date of judicial demand until paid, and reasonable attorney fees. A traversal of request for attorney fees and costs was filed by Defendants on October 26, 2021, and the court rendered judgment on November 26, 2021. This appeal followed.

For the following reasons, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

On February 27, 2018, Olive Street and Optimal Wellness entered into a lease (the "Lease") of certain office space located at 745 Olive Street, Suite 109, Shreveport, Louisiana 71104 (the "Premises"), for a term of 40

months (the "Term") for the operation of a medical clinic, beginning March 1, 2018, and ending June 30, 2021, unless sooner terminated as provided in the Lease, though no termination method was stated therein. Yerrapragada executed a personal guaranty in her individual capacity of Optimal Wellness's obligations under the Lease (the "Guaranty"). Yerrapragada was removed as member/manager of Optimal Wellness on June 4, 2018, and was replaced by Jennifer Dunn.

Optimal Wellness vacated the Premises without notice to Olive Street in March 2020 and stopped paying rent. Olive Street's leasing agent and property manager, Vintage Realty, was informed by maintenance personnel in early April 2020 that there was a sign on the door stating that Optimal Wellness was no longer at the Premises, most of the furniture, office equipment, and decorative items had been removed, and the keys to the Premises were placed in a bag and left on the reception counter.

On April 21, 2020, Olive Street made written demand on Defendants for payment of all outstanding amounts due under the Lease, which included past due and accelerated rent (the "Rent Balance") and other fees. The demand letter was mailed to Yerrapragada at 2508 W. Bert Koons Industrial Loop, No. 400, Shreveport, LA 71118, not to the address provided under the notice provision in the Lease, 745 Olive Street, Suite 109, Shreveport, LA 71104. The demand letter did not inform Defendants that Olive Street would be retaking possession of the property. Defendants did not tender any portion of the amounts demanded in the April 21, 2020, demand letter.

On June 16, 2020, Olive Street filed its *Petition for Past Due Rent and Other Damages* against Defendants for breach of the Lease arising out of

2

Optimal Wellness's abandonment of the premises, failure to pay rent, and for other amounts accruing and due thereunder. Olive Street sought recovery from both Optimal Wellness, as the lessee, and Yerrapragada, as the guarantor of the Lease, of the full Rent Balance, legal interest, attorney fees, and costs owed to it in accordance with the Lease. On June 30, 2020, Defendants filed an answer to the Petition, admitting that Optimal Wellness entered into a lease agreement with Olive Street on or about March 1, 2018, and that they vacated the Premises in April 2020. Defendants also admitted that Olive Street is entitled to recover attorney fees incurred in seeking all amounts due under the Lease from Defendants. Defendants denied the remainder of Olive Street's allegations.

In October 2020, Olive Street removed Optimal Wellness's sign from the office door and its name from the building directory, rekeyed the property to a vacancy master, did not reissue the designated parking space, and listed the property on marketing sites.

Olive Street filed a motion for summary judgment on July 30, 2021, arguing Optimal Wellness's breach of the Lease by abandonment and seeking recovery of damages from Optimal Wellness in the amount of the Rent Balance, attorney fees, plus interest, and from Yerrapragada as a solidary obligor pursuant to the Guaranty. In opposition to Olive Street's motion, Defendants argued that Olive Street failed to set forth sufficient facts to establish abandonment and that Olive Street was not entitled to accelerated rent because Olive Street retook possession of the Premises without first providing proper notice to Defendants. Optimal Wellness also

3

argued that Yerrapragada was not personally bound under the Guaranty because it was invalid.

The trial court granted Olive Street's motion for summary judgment, finding that Optimal Wellness breached the Lease by abandoning the Premises. The court also found that Yerrapragada was liable as a solidary obligor for the amounts owed by Optimal Wellness, noting that by signing the Guaranty, she "stepped into the shoes of the lessee" under the Lease. A written final judgment was signed on March 4, 2021, declaring that Defendants, in solido, owe Olive Street the full Rent Balance, together with interest thereon at the legal rate from the date of judicial demand until paid and reasonable attorney fees. A traversal of request for attorney fees and costs was filed by Defendants on October 26, 2021. The court rendered judgment as to attorney fees on November 26, 2021.

## DISCUSSION

Optimal Wellness argues that the trial court erred in granting Olive Street's motion for summary judgment because genuine issues of material fact remain as to whether: (A) Olive Street made a sufficient showing of abandonment; (B) Olive Street cancelled the lease by retaking possession of the property; (C) Olive Street delivered proper notice to Defendants prior to retaking possession of the property; (D) Yerrapragada signed a valid contract of guarantee; and (E) Yerrapragada was personally liable for attorney fees.

### *Abandonment of Leased Premises*

Optimal Wellness argues that Olive Street failed to prove abandonment, particularly, the specific intent to abandon the property. It

4

urges that issues of material fact remain as to the timing and circumstances under which Olive Street was notified of Optimal Wellness vacating the Premises.

The abandonment of property by a tenant to such an extent as to vest title and control in the landlord involves both an act of abandonment and a specific intent to abandon. *Powell v. Cox,* 92 So. 2d 739 (La. App. 2 Cir. 1957). The characteristic element of abandonment is voluntary relinquishment. *Id.* La. C.C.P. art. 4731 provides certain indicia of abandonment to support a lessor's reasonable belief therein: a cessation of business activity or residential occupancy; returning keys to the premises; and removal of equipment, furnishings, or other movables from the premises.

Optimal Wellness's actions clearly meet all indicia of abandonment. Its furniture, equipment, and furnishings were removed, its office keys were left on the counter, and a sign was placed on the door referring to the closing of its business. There is testimony by Optimal Wellness's current manager that it left the Premises because the business was no longer operational due to the lack of doctors to prescribe medication. The lessor's *realization* of the act of abandonment is irrelevant to a finding of the lessee's intent.

Optimal Wellness also claims that by contacting Olive Street's property manager, Vintage Realty, in an attempt to renegotiate the terms of the Lease, it negated the specific intent to abandon. However, this communication occurred prior to the time Optimal Wellness vacated the Premises and the attempted renegotiation was not pursued. Therefore, there

was a specific intent to abandon the property at the time Optimal Wellness vacated the Premises.

***Cancellation of Lease***

Optimal Wellness claims that due to Olive Street's actions in retaking possession of the Premises, it could not take occupancy during the remaining term, effectively cancelling the Lease. It relies on the holding in *Richard v. Broussard,* 495 So. 2d 1291 (La. 1986), in its assertion that Olive Street is precluded from claiming accelerated rent payments for the remainder of the Lease term and may only recover accrued rentals due before cancellation in October 2020.

In *Richard*, the lessees paid rent on a building for approximately eight months before abandoning the property. *Id.* The lessors immediately began advertising the property, but were unable to find a new tenant, so they began occupying the premises for their own business. *Id.* The trial court rendered a judgment in favor of the lessors for accelerated rent, costs, and expenses, with attorney fees in the amount of 25%. *Id.* The court of appeal affirmed the ruling with the exception of a remand for the determination of a reasonable attorney fee. *Id.* The Louisiana Supreme Court reversed. *Id.*

The Supreme Court in *Richard* held that generally, when a lessee defaults on a lease agreement, the lessor may either: (1) sue to *cancel* the lease and recover accrued rentals due; or (2) sue to *enforce* the lease and recover both accrued rentals and future accelerated rentals (if the lease contains an acceleration clause). *Id.* If the lessor elects to *cancel* the lease, the lease is terminated and the lessor is entitled to return into possession, but forfeits the right to all future rentals. *Id.* If the lessor elects to *enforce* the

lease, he may obtain a money judgment against the lessee based on the terms of the lease agreement, but the lease remains in effect and the lessee retains the right of occupancy for the remainder of the term of the lease. *Id*. However, when the lessee breaches the lease by *abandoning* the premises, the lessor has the right to take possession of the premises as agent for the lessee and relet the premises to a third party without canceling the lease or relieving the lessee of his obligations under the lease contract. *Id*.

The *Richard* ruling emphasized the legal effect of the lessor's reentry after abandonment by the lessees to utilize the premises in the operation of their personal business, finding that the lessors did more than simply reenter the premises for the purposes of reletting to a third party. *Id*. When the lessors sued to recover the accelerated rent, the lessees retained the right to occupy the premises; however, the lessors thereafter *usurped that right* from the lessees by occupying the premises themselves to the exclusion of the lessees. *Id*. The lessors' election to occupy the premises for their own business use *effectively terminated* the lease, regardless of the lessors' good faith motivation or their intent that the lease should continue in effect. *Id*.

This case is easily distinguishable from *Richard*. Approximately six months after Optimal Wellness's abandonment of the Premises, and following a demand letter sent by Olive Street in response to the breaches of the Lease for abandonment and failure to pay rent, Olive Street rekeyed the locks to a vacancy master, removed Optimal Wellness's office door sign, removed its name from the building directory, and advertised for a potential new tenant. Olive Street did not occupy the premises for their own personal use to the exclusion of Optimal Wellness. Olive Street merely reentered the

7

premises for the purposes of reletting to a third party and safekeeping of the property. Optimal Wellness abandoned the property and *excluded themselves* by surrendering the keys and never attempting or expressing a desire to occupy the property thereafter. Olive Street did not usurp any right of occupancy of Optimal Wellness following the abandonment that would result in the termination or cancellation of the Lease. Therefore, Optimal Wellness's obligations under the Lease and Olive Street's claim to accelerated rent payments for the remainder of the Lease were preserved.

In addition, the Lease provides that "in the event of a default by LESSEE, as set forth above, LESSOR immediately may elect to exercise any of the following nonexclusive remedies, to wit:

> 1. Accelerate the rent for the unexpired term of this Lease and declare the same immediately due and payable;
> 2. Immediately terminate this Lease and proceed to recover all past due rent and other sums due and owing as of the date of termination;
> 3. Proceed to recover all past due rent and other accrued liabilities only, reserving to LESSOR the right later to proceed for the remaining installments of rent and other sums for which LESSEE may be or become liable as a result of LESSEE's default."

Optimal Wellness failed to pay Olive Street rent accruing under the Lease and abandoned the Premises in direct violation of the express terms of the Lease. As a result of these breaches, Olive Street is entitled to past rent due as well as accelerated rent for the unexpired term of the Lease pursuant to the Lease as well.

### *Notice of Retaking Possession*

Optimal Wellness asserts that formal notice is required before a lessor may retake possession of the property, even if the property was abandoned; therefore, since the notice provided by Olive Street in the form of a default

8

letter was not provided to the address indicated in the Lease, summary judgment must be reversed on this fact alone.

In support of its argument, Optimal Wellness cited La. C.C.P. art. 4731(B), which provides as follows:

> After the required notice has been given, the lessor or owner, or agent thereof, may lawfully take possession of the premises without further judicial process, upon a reasonable belief that the lessee or occupant has abandoned the premises. Indicia of abandonment include a cessation of business activity or residential occupancy, returning keys to the premises, and removal of equipment, furnishings, or other movables from the premises.

It also cited La. C.C.P. art. 4701 regarding proper notice:

> When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.

Optimal Wellness interpreted the above statutes to mean that there were certain requirements for a lessor prior to retaking possession, *regardless* of the lessee's abandonment. We disagree with this interpretation.

La. C.C.P. art. 4731 read in its entirety, and in the context of the Title for which it is a subpart, Eviction of Tenants and Occupants, concerns the cessation of a lessee's right of occupancy due to *termination* of a lease where the lessor wishes to obtain possession of the premises. In such an eviction case, *notice to vacate* is generally required. La. C.C.P. art. 4703 refers to the notice *under this Title* being attached to a door of the premises in the event the premises are abandoned, but again, this requisite notice to

9

vacate is in relation to the eviction process when a lessor wishes to terminate a lease agreement and regain possession of the property.

In this case, a notice to vacate was not required because: (1) Olive Street was not *terminating* the lease to regain occupancy for itself; and (2) Optimal Wellness had already abandoned the premises, rendering an instruction to vacate unnecessary. Whether Olive Street's demand letter sent to an address different than indicated in the Lease is considered proper notice to vacate is immaterial.

### *Validity of Personal Guarantee*

Optimal Wellness claims that the trial court erred by finding that the contract of suretyship executed by Yerrapragada was valid and that *Pelican Supply, Inc. v. J.O.H. Construction Co., Inc.*, 94-991 (La. App. 5 Cir. 3/28/95), 653 So. 2d 699, was not applicable because this Lease was a different type of obligation. It argues that *Pelican Supply* should apply since this Lease contains the same obligations and is also a contract of suretyship; and, as in that case, the Guaranty executed by Yerrapragada should be considered invalid.

In *Pelican Supply*, a supplier, Pelican, filed suit against J.O.H. Construction and its vice president, Heidingsfelder, to collect on an unpaid open account. *Id*. J.O.H. had an ongoing business relationship with Pelican and was entering into an additional open account. *Id*. At the time, the company was in good financial condition. *Id*. Heidingsfelder completed the application on behalf of the company and executed the guaranty in question, but he had never before personally guaranteed any of J.O.H.'s obligations. *Id*. Heidingsfelder testified that he had no intent to obligate himself

10

personally on a credit application for the company and would never have signed the document if he thought it could be interpreted as a personal guaranty. *Id.* Notably, his signature on the guarantee agreement was followed by the name "J.O.H. Construction Co." *Id.*

The Fifth Circuit upheld the trial court's ruling that Heidingsfelder's signature was made in a representative capacity and led to no personal responsibility of the corporate representative, applying the laws of suretyship. *Id.* La. C.C. art. 3035 provides that "suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." *Id.* Contracts of suretyship are subject to the same rules of interpretation as contracts in general. *Id.* A contract of guaranty is equivalent to a contract of suretyship and the two terms may be used interchangeably. *Fleet Fuel, Inc. v. Mynex, Inc.*, 40,683 (La. App. 2 Cir. 3/8/06), 924 So. 2d 480, *writ denied*, 06-0762 (La. 6/23/06), 930, 977.

In interpreting contractual provisions about which there exists some doubt, a court must seek the true intention of the parties, even if to do so necessitates departure from the literal meaning of the terms of the agreement. *Id.* Where the personal or representative nature of a signature is unclear upon examination of the document, parol evidence is admissible to show the parties' intent. *Id.*

As in *Pelican Supply*, *supra*, we find that the laws of suretyship apply to the personal guaranty executed by Yerrapragada. However, we find the facts in this case to be distinguishable. In *Pelican*, the contract of guaranty was ambiguous on its face since Heidingsfelder referenced his representative

11

capacity following his signature, allowing the introduction of parol evidence as to the intent of the obligor. Here, Yerrapragada executed "Exhibit D" to the Lease entitled "In Solido Obligation and Guaranty" by signing in her individual capacity with no reference to being a representative of Optimal Wellness. Her signature was followed by the designation, "In Solido Obligor and Guarantor." Yerrapragada signed the Lease itself on behalf of Optimal Wellness as Manager, as indicated on the signature page. Also, the language in the Guaranty clearly establishes Yerrapragada's individual obligation by providing that "the undersigned hereby makes himself or itself a party for the Lease and binds himself or itself in solido with Lessee for the faithful performance and fulfillment by Lessee … the punctual payment of all monies due under the Lease and the performance of all other agreements and obligations of Lessee contained in the Lease[.]"

Courts are bound to give legal effect to all written contracts according to the true intent of the parties. *First South Farm Credit, ACA v. Gailliard Farms, Inc.*, 38,731 (La. App. 2 Cir. 8/18/04), 880 So. 2d 223. The intent of the parties to a written contract which is clear, explicit, and leads to no absurd consequences must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. *Id.*, *citing Bonfanti Marine, Inc. v. Clement,* 439 So. 2d 537 (La. App. 1 Cir. 1983). Additionally, signatures are not mere ornaments. *Id.*, *citing Tweedel v. Brasseaux,* 433 So. 2d 133 (La. 1983); *see also IPS Equip., LLC v. Cooper,* 50,506 (La. App. 2 Cir. 2/24/16), 188 So. 3d 1106. A person who signs a written agreement is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that it was not explained

to him, or that he did not understand it. *Id.*, *citing Smith v. Leger,* 439 So. 2d 1203 (La. App. 1 Cir. 1983); *see also Greely v. OAG Properties, LLC,* 44,240 (La. App. 2 Cir. 5/13/09), 12 So. 3d 490, *writ denied,* 09-1282 (La. 9/25/09), 18 So. 3d 77.

The language of the Guaranty and Yerrapragada's signature thereto is clear and unambiguous, and any contrary intent cannot be explained by parol evidence. By her execution of the document, Yerrapragada is presumed to know and understand its contents and cannot avoid her obligations as a personal guarantor.

### *Personal Liability for Attorney Fees*

Because the Lease specifically provides for attorney fees, Olive Street is entitled to an award thereto from Optimal Wellness. *See* La. C.C. art. 2000; *S. Trace Prop. Owner's Ass'n v. Williams*, 52,653 (La. App. 2 Cir. 9/25/19), 280 So. 3d 826, *reh'g denied* (Nov. 14, 2019).

As previously stated, the Guaranty is valid and Yerrapragada is personally bound as guarantor in solido with Optimal Wellness as Lessee for the faithful performance and fulfillment by Lessee of *all* obligations contained in the Lease, which includes payment of attorney fees.

### CONCLUSION

For the foregoing reasons, this Court finds that there are no genuine issues of material fact as to Optimal Wellness's breach of the lease due to its abandonment of the premises or any retaking of possession by Olive Street, as well as to the validity of the Guaranty executed by Yerrapragada. We hereby affirm the trial court's granting of Olive Street's motion for summary judgment declaring Optimal Wellness and Yerrapragada, in solido, owing

13

Olive Street the full Rent Balance, together with interest thereon at the legal rate from the date of judicial demand until paid, as well as the trial court's judgment as to attorney fees. All costs of appeal are to be assessed to Optimal Wellness and Yerrapragada, in solido.

**AFFIRMED.**