DREW, J.
hMs. Shirley Burks filed suit in proper person in Monroe City Court, complaining that the home she bought had numerous structural and cosmetic problems, the repair of which should have been the responsibility of the seller. The trial court disagreed. Based on this confusing record, we cannot say that the trial court’s judgment was clearly wrong. We affirm the lower court’s judgment.
BACKGROUND AND TRIAL
After Burks decided to purchase a home, she testified that her pastor gave her the phone number of Gwen Fields at Affordable Mortgage who told Burks she had found Burks a nice house. According to Burks, Fields told Burks that it “is going to be like a brand new house.” When Burks visited the house, the remodeling was in progress. Burks informed the trial court that she just glanced in, “Didn’t go on the back or on the outside, just walked in and walked out.” She believed the house would be nice when completed and decided to buy it.
*619 Sometime thereafter, Burks stated that Gwen called and, in Burks’ opinion, rushed her to complete the purchase. On September 16, 2005, Burks signed the cash deed and purchased the property for $72,600. She understood that the house was going to “be fixed like a brand new house.” After moving in, Burks was very dissatisfied about myriad perceived defects and demanded that the seller fix the home to her satisfaction. Burks filed her suit on November 28, 2005, seeking to compel the seller to repair the home.
| ¡Among the many problems cited by Burks were unlevel and rough cabinets, poor paint work, uneven floors, leaking plumbing, uncovered electrical outlets and light switches, back piece from an entertainment center used in floor beneath carpet, no light in hall, substandard carpentry work, crudely done baseboards, smoke marks on the exterior, poorly hung screen door, inadequate heating and cooling, and lack of vent covers both inside and outside. Burks introduced into evidence numerous photographs of alleged defects along with a videotape showing her complaints. Plaintiff maintained that no one informed her that the house had been damaged by fire. Burks also emphatically denied that she initialed the waiver of warranty in bold face print on the cash deed.
In addition to the photos and videotape, Burks placed into evidence the cash deed she said was given to her at closing with only her signature and that of Gilmer Hin-gle, representing the seller, Northgate Realty, LLC. She also supplied a certified copy of the deed, which included signatures of witnesses and the notary, a copy of the appraisal for $81,000, the loan closing instructions, and a copy of the fire report on the property.
Gilmer Hingle testified:
• He was authorized to act for the vendor Northgate Realty;
• He had no knowledge of representations made to Burks by others prior to the closing;
• Burks’ complaints about the roof leaking were not made until approximately a year after the closing;
• Repairmen sent by Northgate five or six times after the closing made virtually all Burks’ requested repairs;
• Burks had ample opportunities to see the home prior to the closing;
Is*He explained the deed and closing documents to Burks at the closing; and
• Concerning Burks’ signature and initials on the cash deed, Hingle was “absolutely positive I saw you sign that and I’m virtually positive you initialed it [the waiver of warranties in the deed]. It wasn’t at the same time, because we forgot to do it the first time.”
With a confused stipulation by Burks, the defendant placed the entire record into evidence along with affidavits from Gwen Fields, the CEO of Affordable Mortgage, the lender, and Keith Reynolds, a contractor who made repairs on the home. The trial court labored to explain to Burks that, if present, Fields and Reynolds would have testified consistently with the contents of the affidavits and that Burks would not have the opportunity to cross-examine them.
In Fields’ affidavit, she attested that an electrician and a plumber were sent to the house to deal with complaints, that the home is insulated, that the flooring is up to code, and that all defects have been either fixed or did not exist, notwithstanding Burks’ waiver of any defects in purchasing the house “as is.”
The content of Reynolds’ affidavit was that:
*620 • He redid the home following fire damage;
• Burks came to the job soon after he began work when there was visible fire damage;
• Burks made several visits while work was in progress and knew the house was being redone because of fire;
• Burks made no complaints about his workmanship;
• The home repairs were “up to code”;
• The house is insulated, has no unpainted smoke damage, no unseemly openings, has plyboard sub-flooring, proper plumbing and wiring, |4doors working or replaced, correctly installed baseboards, and no missing trimming.
The trial court rejected Burks’ demands, based primarily upon the clear, unambiguous language contained in bold-faced print on the single page cash deed.
The edifice and any structures situated upon the above described immovable property is sold in [an] “as is” condition without any warranty whatsoever, expressed or implied. Purchaser expressly waives all implied warranties, including any warranty of merchantability, any warranty of fitness for a particular purpose and any warranty against hidden or latent defects. Purchaser further waives any right purchaser may have to demand recission [sic ] of this sale or reduction of the purchase price for any breach of any such implied warranties.
DISCUSSION
The trial court observed that a redhibi-tory vice which renders a thing useless entitles a buyer to rescind the sale. A redhibitory defect which diminishes the item’s usefulness so that it is presumed the buyer would not have purchased it had the buyer known of the defect entitles the buyer to a reduction of the purchase price. La. C.C. art. 2520. Seeking neither to rescind this sale nor to have a reduction of the sales price, Burks demanded that the property be repaired.
The seller owes no warranty for defects known to the buyer at the time of sale or for defects which a reasonably prudent buyer should have discovered. La. C.C. art. 2521. Most relevant is La. C.C. art. 2548, which directs that parties may agree to exclude a warranty against redhi-bitory defects provided the exclusion is clear and unambiguous and brought to the attention of the buyer. The determination of whether a defect is apparent by | ¡^reasonable inspection is a factual determination that will not be disturbed by the appellate court unless manifestly erroneous. Dage v. Obed, 40,414 (La.App. 2d Cir.12/14/05), 917 So.2d 713.
The trial court correctly found that the fire damage was readily apparent from discoloration in the carport area and that many of the interior issues were cosmetic with some defects which would have been easily discoverable by a licensed real estate inspector. Moreover, the videotape placed into evidence by plaintiff revealed that most of her complaints dealt with matters easily observable by anyone examining the property. By Burks’ own statement, her first look at the property was cursory, after which she decided to buy the property without making a careful examination of the house for what was primarily noticeable flaws. Rather than assisting her, the videotape illustrated that Burks bought the house even though the majority of her complaints were clearly recognizable with the simplest scrutiny.
We cannot say that the trial court was manifestly erroneous in determining that the waiver of warranties contained in the cash deed signed by Burks was clear and *621 unambiguous and brought to Burks’ attention. As observed by the trial court, the cash deed was a single page document with the relevant language contained in clear bold-faced print, standing out from the rest of the instrument. The trial court also pointed out that the sales price of $72,600 was less than the appraised value of $81,000.
For whatever reason, Burks acquiesced in her friend’s rushing her to complete the sale. She knowingly signed a Cash Sale Deed containing a 16clear and unambiguous waiver of all defects, accepting the house on an “as is” basis. She is undoubtedly sincere in believing she was misled by scoundrels, and she may have been, but she was her own worst enemy in hurrying to sign this deed. Regrettably, she chose to undertake the most significant purchase that most folks make in a lifetime, without:
• seeking advice,
• obtaining independent counsel, or even
• making a detailed examination of the property.
Burks acknowledges candidly that she signed the cash deed. It is well settled that signatures to instruments are not mere ornaments. A person signing a written instrument is presumed to know its contents. She cannot avoid its obligations by contending that she did not read it, that it was not explained to her, or that she did not understand its meaning. See Cason v. Cason, 38,974 (La.App. 2d Cir.10/27/04), 886 So.2d 628. Unfortunately in this dispute, it is not within the province of this court to give relief to this plaintiff, who, subsequent to the purchase of her home, became dissatisfied with problems obviously extant at the time of the purchase.
We are uneasy, however, as this real estate transaction fails to pass the “sniff test” for many reasons:
• Defendant Northgate Realty, LLC, was represented, apparently in proper person, at trial by Gilmer P. Hingle, “member,” who not only testified, but also questioned witnesses in the de facto role of an attorney, even though he is disbarred;
• The evidence preponderates that the Cash Sale Deed in question here was signed outside the presence of a notary, and possibly outside the presence of the “witnesses” thereto; while all signatures are | ./‘notarized,” Hingle acknowledged at trial that the notary was not present when some of the documents were signed;[1]
• The photographs belie the appraisal, to a great extent; and
• Even though Ms. Burks signed the deed, there is at least some evidence that someone else placed her (superfluous) initials on the document.[2]
There are predators in the world of commerce who prey on people who are unschooled in legal transactions, and who are unable or unwilling to secure competent legal counsel. This may well be one or both of these situations. Ms. Burks pursued her complaints without assistance and filled the record with unclear pleadings, as well as confused and inconclusive testimony and evidence. Sadly, the status of this convoluted and piecemeal record disallows us the ability to provide Ms. Burks any legal relief.
This buyer and this seller had wildly divergent expectations about the remodeling of the house. While the record does *622 not contain the proof, we surmise that this lady was permitted to be unrealistic in her understanding of what the vendor would provide in the way of renovations. We would suggest that the involved employees, agents, and principals of the vendor corporation take a good look in the mirror, and take stock of their business practices with those least able to protect themselves.
DECREE
At the cost of plaintiff, the judgment is AFFIRMED.

. Whatever happened to the requirement that notaries identify the folks who come before them, and physically see them sign the document to be notarized?

. The copy of the deed furnished to Burks at the closing lacks the following: her initials, the signatures of witnesses, and the signature of the notary.