GARRETT, J.
| North End Farms and David F. Cooper, III (“Mr. Cooper”), appeal from a trial court judgment ordering them to pay $8,248.14 for damage to equipment leased from the plaintiff, JPS Equipment, LLC (“JPS”). JPS answered the appeal, contending that the trial court erred in failing to award it attorney fees. We affirm the trial court judgment on the merits. On the issue of attorney fees, we reverse and remand for a determination of a reasonable amount of attorney Lees to be awarded for trial work. We award $1,000 for the appellate work of JPS’s counsel.
FACTS
In 2009, JPS rented an excavator to North End Farms. The excavator had been ordered by Mr. Cooper. When it was delivered, Mr. Cooper signed a document entitled “RENTAL AGREEMENT.” By his own admission, Mr. Cooper did not read the document before signing it. In relevant part, the document provided the following:
I, the undersigned renter, acknowledge that I have received, read and understand the instructions regarding the use and operation of the rental equipment. I assume full responsibility for all rented equipment, including the safe and proper use, operation, routine maintenance, *1108 storage and the return of your equipment to you.
I acknowledge that I have read and fully understand this rental equipment contract (both front and back) and agree to be bound by all of the terms and conditions of this agreement. I acknowledge that I have received a true and correct copy of this agreement at the time of my signing. If signing on behalf of another, I have authority to do so and I agree to be personally liable to the extent that I do not.
As indicated above, I accept/decline the Limited Damage Waiver, as described on the reverse side, and (if I have accepted or failed to initial) I agree to pay the above described additional charges therefore. [Emphasis added.]
|2Beside the last paragraph, there were two boxes — one stated “IF ACCEPTED, PLEASE INITIAL,” and the other was a blank box in which the signer could affix his initials.
Additional provisions were on the back of the document. One of these stated:
17. Legal Expenses. The Customer will pay to the Lessor all of the Lessor’s damages, costs and expenses, including the full amount of all legal fees, accountants and expert witness fees, disbursements, and costs of investigation whether legal proceedings are commenced or not, incurred by the Lessor in enforcement of this Agreement.
While Mr. Cooper was operating the excavator, a tree on his property fell on it, causing more than $8,000 in damages.
On February 22, 2010, JPS filed suit against Mr. Cooper and his son, John, as partners, and Mr. Cooper, as guarantor, d/b/a North End Farms. The original petition asserted that JPS sold merchandise to the defendants, no payments were made, and a balance of $8,248.14 was owed.[1] It further alleged that Mr. Cooper had signed a credit application in 2006, in which he personally guaranteed payment of all sums owed to JPS. In response to an exception filed by the Coopers, JPS filed an amended petition which added North End Farms as an additional defendant.
In November 2011, JPS filed a motion for summary judgment. In support of the motion, it submitted the depositions of Mr. Cooper and his secretary, Katherine Self. In his deposition, Mr. Cooper admitted his signature on the 2009 rental agreement, but denied signing the 2006 credit application or routinely authorizing his secretary to sign on his behalf. He 13claimed he thought the lease price included insurance. Had he known otherwise, he would have called his insurance agent and insured the equipment. However, when presented with documentation indicating that he had, in fact, purchased insurance from Farm Bureau Insurance on equipment previously rented from JPS in 2007 and 2008, he could not recall those events. He testified that, on other occasions, when rented equipment received minor damage, he paid for the damage with a check because the deductible on the insurance was not met. He did not dispute a telefax from JPS dated August 14, 2009, informing him that JPS’s insurance coverage stopped when the equipment was unloaded from its truck. He had filed for insurance coverage through Farm Bureau in the past. However, he repeatedly stated his belief that he was not responsible for the damage sustained by the excavator because JPS *1109 had not “fulfilled their fiduciary responsibilities” to him by informing him that he needed to purchase insurance. In her deposition, Ms. Self said that she signed the credit application on Mr. Cooper’s behalf. She testified that she would sign his name if he was out of the office, but only with his permission.
In response to the motion for summary judgment, the defendants asserted that the sum demanded by JPS for equipment rental had previously been paid in full and that the balance being sought represented damages to the equipment occurring while it was being used by the defendants. They filed an affidavit by Mr. Cooper in which he stated that he and/or North End Farms had rented equipment from JPS on only two prior occasions and that, on each of those occasions, a representative of JPS informed them that they ] 4were required to have insurance on the equipment. Following argument on January 26,, 2012, the motion for summary judgment was denied.
On August 12, 2013, JPS ■ (now doing business as Volvo CE Rents,- Inc.) filed a second amended petition. This petition clarified that the amounts being sought stemmed from the damage caused to the excavator while it was being rented and operated by the defendants.
In response to this petition, the defendants claimed that other dealers with whom they dealt advised them of the necessity of procuring insurance and refused to allow the rented equipment to leave their premises without proof of insurance. They maintained that JPS failed to advise or caution them about the insurance requirement, leading them to reasonably assume that the dealer.provided insurance, and that they would have promptly procured insurance if advised of the insurance requirement.
Trial was eventually held on June 5, 2014. The parties stipulated to “what’s in the record” and the' exhibits that were in “that record.” They also stipulated to the depositions of Ms. Self and Mr. Cooper. Mr. Cooper also testified at trial. Joe Belk, JPS’s former sales manager, testified about the standard rental agreement JPS utilized, which provided for the customer to have the' option of supplying insurance on the rented equipment and providing a certificate of insurance, or choosing the limited damage waiver, which cost a 12 percent surcharge on the base rental amount and covered damage only up to a certain dollar amount. Mr. Belk also testified that he observed the damage to JPS’s equipment. However, he admitted that he was not involved in the instant transaction and that the provision of the | ^contract pertaining to acceptance of the damage waiver was not initialed by the customer. Mr. Belk further testified that Mr. Cooper was a repeat customer.
In his trial testimony, Mr. Cooper admitted that, when the excavator he ordered was delivered, he signed a document entitled “rental agreement” without reading it. The man who delivered the excavator said he had to have-'Cooper sign “this delivery form” or “delivery ticket,” He did not know there was writing oh the back of the form. - He also testified this was only the second piece of equipment he had ever leased from JPS; he had previously leased another excavator. He stated that no one talked to him about securing insurance for the excavator. He maintained that, in his dealings with other companies, insurance was included in the lease of agricultural equipment or the equipment was -not allowed on the owner’s premises until all of the insurance documents were in their file. He recounted that he could have easily obtained insurance from his Cousin, an- insurance agent, had it been required of him.
*1110 The matter was taken under advisement, and both sides filed post-trial briefs. On July 7, 2014, the trial court issued written reasons for judgment. It stated that it would not consider the 2006 credit application, since its authenticity had been called into question because of the issue concerning Ms. Selfs authority to sign Mr. Cooper’s name. Considering the 2009 rental. agreement, the trial court noted that Mr. Cooper candidly a.dmitted not reading it or recognizing what it actually was before he signed it. Because this document clearly placed the responsibility for the care of the |6excavator on the defendants, the trial court ruled in favor of JPS and awarded damages in the undisputed: amount of $8,248.14, together with legal interest from the date of judicial demand until paid. On the issue of “legal expenses,” the trial court stated that it was informed by the clerk that the back page of the rental agreement did not make it into the record. The court did not recall whether the second page of the rental agreement was offered or admitted as evidence. Without that document, the trial court found that it could not determine whether JPS was entitled to attorney fees. Although it, did not award attorney fees, the trial court did assess all costs against the defendants. The judgment signed on August 26,' 2014, specified.that legal interest ran- from the date of judicial demand of February 22, 2010. The defendants filed á motion for new trial on the issue of legal interest and assessment of costs. They contended that the first two petitions filed by.JPS alleged theories of open account; only the- second amended petition, filed on August 12, 2013, asserted the proper theory of recovery of contract. ■ They also argued that .they should not be taxed with costs from JPS’s unsuccessful motion for summary judgment, and other-unspecified items of cost. They later filed an.amended motion for new trial in which they assailed the trial court’s ruling on liability; in support of this, they generally reasserted Mr. Cooper’s testimony. JPS opposed the motions for new trial.. The motions were argued on January 29, 2015, and the matter was again taken under advisement. On May 29, 2015, the trial court signed a judgment denying the motions at the defendants’ cost.
|7The defendants have appealed and urge that the trial court erred in finding that the defendants were liable for damages to the equipment based on the testimonial and documentary evidence. The plaintiff has answered the appeal seeking an award for attorney fees pursuant to the 2009 contract.
SIGNED CONTRACT

Law

Signatures are not mere ornaments. Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); Williams v. Interstate Dodge Inc., 45,159 (La.App.2d Cir.4/14/10), 34 So.3d 1151; Burks v. Affordable Mortgage, L.L.C., 42,280 (La.App.2d Cir.7/11/07), 961 So.2d 618; Shreveport Great Empire Broad., Inc. v. Chicoine, 528 So.2d 633 (La.App.2d Cir.1988). A person who signs a written instrument' is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained, or that he did not understand it. Williams v. Interstate Dodge Inc., supra; Greely v. OAG Properties, LLC, 44,240 (La.App.2d Cir.5/13/09), 12 So.3d 490, writ denied, 2009-1282 (La.9/25/09), 18 So.3d 77; Burks v. Affordable Mortgage, L.L.C., supra; Southern Treats, Inc. v. Titan Properties, L.L.C., 40,873 (La.App.2d Cir.4/19/06), 927 So.2d 677, writ denied, 2006-1170 (La.9/15/06), 936 So.2d 1271; First South Farm Credit, ACA v. Gailli *1111 ard Farms, Inc., 38,731 (La.App.2d Cir.8/18/04), 880 So.2d 223.
La. C.C. art. 1927 provides, in relevant part, that a “contract is formed by the consent of the parties established through offer and acceptance.”
Agreements legally entered into have the effect of law upon the parties thereto. Shreveport Great Empire Broad., Inc. v. Chicoine, supra.

Discussion

The defendants contend that the trial court erred in finding them liable for the damage to the excavator. They argue that Mr. Cooper was asked to sign a delivery ticket and was never directed to any contractual provisions. Thus, they maintain there was no meeting of the minds or establishment of any contractual provisions, pursuant to La. C.C..art. 1927, under which they could be held liable for the damages sought. JPS argues that Mr. Cooper is trying to evade his legal responsibilities after signing a contract without reading it.
We note at the outset that the defendants seek to invoke an adverse presumption due to JPS’s failure to call as witnesses the salesman with whom Mr. Cooper spoke on the phone and the delivr eryman. They contend that these witnesses still worked for JPS and should have been called. We note that this argument was never raised below during the trial or in the post-trial brief filed by the defendants and, thus, was not ruled upon below. As a general rule, appellate courts will not consider issues raised for the first time on appeal. See Geiger v. State ex rel. Dep’t of Health & Hosp., 2001-2206 (La.4/12/02), 815 So.2d 80; Segura v. Frank, 630 So.2d 714 (La.1994); Gladney v. Sneed, 32,107 (La.App.2d Cir.8/18/99), 742 So.2d 642, writ denied, 1999-2930 (La.1/14/00), 753 So.2d 215. Assuming, arguendo, that we should consider this argument, we find it has no merit.
| ?An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. Whether to apply such an inference is fully within the discretion of the trial court. Glasscock v. Bd. of Sup’rs of La. State Univ., 49,855 (La.App.2d Cir.8/19/15), 174 So.3d 757, writ denied, 2015-1628 (La.10/30/15), 179 So.3d 618. The adverse presumption is- referred to as the. “uncalled witness”, rule and applies when a party has the power to produce witnesses who would elucidate the transaction or occurrence and fails to call those witnesses. Bartley v. Fondren, 43,779 (La.App.2d Cir.12/3/08), 999 So.2d 146. The presumption is rebuttable, particularly when, the witness is equally available to the opposing party. Easter v. Direct Ins. Co., 42,178 (La.App.2d Cir.5/9/07), 957 So.2d 323.
According to Mr. Belk’s testimony, JPS was originally a iranchise of Volvo Construction Equipment. In 2011, Volvo purchased all of the existing franchises in the nation, including JPS. Thereafter, the JPS owners opened another businéss. At the time' of trial, Mr. Belk stated that- he worked for Blue Line Rentáis in Monroe, as did Richard Potter, the driver who delivered the excavator. He testified that Ryan Faler, the salesman who apparently spoke tó Mr. Cooper on‘ the' phone, worked for a JPS-entity in Bossier City, but that “JPS today ... is a -different entity.” The second amended petition stated that JPS was currently doing business as Volvo CE Rents, Inc. Thus,.it.appears that,, at the time of the trial, Mr. Belk and - Mr. *1112 | inPotter no longer worked for the plaintiff in this suit, while Mr. Faler’s employer was somewhat unclear. Furthermore, JPS was required only to prove its own case, which it did by producing a copy of the signed contract. Mr. Cooper admitted that he signed the document. Mr. Potter and Mr. Faler — who may have been relevant to the defendants’ claim that Mr. Cooper was somehow misled — were equally available to the defendants. Under the facts of this case, the adverse presumption argument urged on appeal for the first time is without merit.
The defendants also maintain that JPS’s delivery man owed some sort of fiduciary duty to Mr. Cooper to (1) tell him that he was signing a contract, (2) call his attention to its terms and circumstances, and (3) show him the reverse side of the document.[2] However, they have failed to cite any legal authority establishing such a fiduciary duty under the facts of this case.
The record indicated that Mr. Cooper was an experienced businessman accustomed to engaging in transactions and negotiations. His decision to sign the document without reading it is attributable only to himself, and he must bear the consequences of his action. He ordered the excavator, accepted delivery, signed the rental agreement, operated the equipment, and paid the rental charges. As astutely noted by the trial court:
While Mr. Cooper, quite honestly, testified that he did not read the document or recognize what it actually was, it is a binding agreement between the parties. We are admonished throughout 1T1 our fives to “read it before you sign it”! This [advice], regrettably, isn’t adhered to by many, including, on occasion, this Court. Be that as it may, the agreement clearly places the responsibility for the care of the excavator on the Defendants.
We find no manifest error in the trial court’s ruling in favor of JPS and its award of $8,248.14 for the damages to JPS’s excavator.
ATTORNEY FEES
JPS answered the appeal, arguing that the trial court erred in refusing to award it attorney fees. It also seeks additional attorney fees for the instant appeal and requests that the appellants be assessed with costs of both the trial court and the appellate proceedings. As to the trial court’s contention that the document needed for awarding attorney fees was not in the record, JPS correctly points out that it was admitted at trial, and the trial court’s failure to notice this document was manifest error.
Exhibit A, a copy of the rental agreement signed by Mr. Cooper, is found in one of the two evidence envelopes included in the appellate record. The transcript shows that it was introduced at trial without objection during Mr. Belk’s testimony, and the pertinent portions were actually highlighted in yellow. The exhibit consists of two pages stapled together; as established in Mr. Belk’s testimony, the second page was the back page of the original document. The attorney fees section in question is found on the second page in paragraph 17 and was quoted supra.
Pursuant to the terms of the contract signed by Mr. Cooper, the defendants were obligated to pay for the legal fees incurred by JPS in enforcing the contract. *1113 The trial court’s failure to award attorney fees in favor of JPS was manifestly erroneous. Accordingly, we reverse that |iaportion of the trial court judgment. We remand the matter to the trial court for a determination of the appropriate amount of the attorney fees to which JPS’s counsel is entitled for the trial coürt services.[3]
JPS’s counsel is entitled to additional attorney fees on appeal. We find that an award of $1,000 is a reasonable amount, given the additional time and effort incurred by counsel in his successful efforts before this court.
CONCLUSION
Based on the foregoing, we affirm the portion of the trial court judgment on the merits awarding damages in favor of JPS. However, we reverse the* portion of the trial court judgment which denied attorney fees to JPS and remand the matter to the trial court for a determination of the appropriate amount of attorney fees to which JPS’s counsel is entitled for trial court work. We award $1,000 in. attorney fees for appellate work.
Costs of this appeal are assessed against the defendants.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. Attached invoices showed that the amount claimed was for repairing the damaged excavator and finance charges.

. In his, deposition, Mr. Cooper repeatedly stated that he believed that JPS had breached its "fiduciary” responsibility to him by not telling him that he needed to obtain insur-anee, while not recalling that he had, in fact, been required to obtain insurance when he rented from JPS in the past.

. The only evidence in the .record on the attorney fees is a rather abbreviated affidavit by JPS's attorney, which was attached to the post-trial memorandum. It set forth a total of $9,167.50. This figure included 32 hours at a billing rate of $275 per hour, as well as an additional sum for mileage; However, the billable hours included time spent on the amended petitions (which corrected errors made by JPS's counsel) and JPS's unsuccessful motion for summary judgment. The defendants should have an opportunity to address what an appropriate attorney fee would be under the unique circumstances presented by this matter.