Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,932-CA
No. 54,933-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 54,932-CA                              No. 54,933-CA

SUCCESSION OF MANMOHAN          SUCCESSION OF
SINGH DHALIWAL                  KAILASH K. DHALIWAL
     Plaintiff-Appellee                   Plaintiff-Appellee

* * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court Nos. 2010-4412
and 2015-1413

Honorable Alvin R. Sharp, Judge

* * * * *

MAHINDERPAL "PAUL" SINGH              In Proper Person,
DHALIWAL                             Intervenor/Appellant

HUDSON, POTTS & BERNSTEIN, LLP          Counsel for Appellees,
By: Margaret H. Pruitt                  Succession of
   Jan P. Christiansen, III           Manmohan Singh
   G. Adam Cossey                     Dhaliwal,
                                        Succession of Kailash K.
                                        Dhaliwal,
                                        Simran Dhaliwal Emaus

KARMINDERAL "KARL" S. DHALIWAL          In Proper Person,
                                        Appellee

DHILLON SOOKHAM DHALIWAL                In Proper Person,
                                        Appellee

* * * * *

Before THOMPSON, HUNTER, and MARCOTTE, JJ.

MARCOTTE, J

These consolidated appeals arise from the Fourth Judicial District Court, Parish of Ouachita, the Honorable Alvin R. Sharp presiding. Mahinderpal Singh Dhaliwal ("Paul"), in proper person, appeals two judgments denying: 1) his objection to the final accounting and tableau of distribution in his father's succession and the accountings in his mother's succession; 2) his motion to recuse and/or disqualify the succession representative; and 3) and his motion to subpoena and depose succession counsel. For the following reasons the trial court's rulings are affirmed.

This is the fifth appeal involving the Dhaliwal family. See *Dhaliwal v. Dhaliwal (Dhaliwal I)*, 48,034 (La. App. 2 Cir. 9/11/13), 124 So. 3d 470, *writ denied*, 13-2931 (La. 2/21/14), 134 So. 3d 1165; *Dhaliwal v. Dhaliwal (Dhaliwal II)*, 49,973 (La. App. 2 Cir. 11/25/15), 184 So. 3d 773, *writ denied*, 16-0236 (La. 4/4/16), 190 So. 3d 1204; *Dhaliwal v. Dhaliwal (Dhaliwal III)*, 52,507 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1188, *writ denied*, 19-00700 (La. 9/6/19), 278 So. 3d 373; and *Dhaliwal v. Dhaliwal (Dhaliwal IV)*, 54,502 (La. App. 2 Cir. 6/15/22), 342 So. 3d 402.

The following facts are taken from the prior appeals. Members of the Dhaliwal family own multiple convenience stores in Ouachita Parish. Dr. Manmohan S. Dhaliwal ("Manmohan") and Dr. Kailash K. Dhaliwal ("Kailash") had two sons, Karl and Paul. Karl is married to Dhillon Sookham ("Sookham"); they have a daughter, Simran Dhaliwal Emaus ("Simran"). Manmohan died intestate in June 2010, and his widow, Kailash, was named administrator of his succession. Following Manmohan's death, litigation over the convenience stores commenced.

Kailash and Manmohan's succession sued Karl and Sookham for a detailed accounting of the convenience store joint venture allegedly involving Karl and his parents, as well as recovery of damages. The trial court granted summary judgment in favor of Karl and Sookham, as well as an exception of prescription they filed. In *Dhaliwal I*, we reversed both rulings and remanded for further proceedings.[1]

Thereafter, Kailash, who was elderly, informed her attorneys, Robert A. Lee ("Atty. Lee") and Sedric E. Banks ("Atty. Banks"), that she wished to dismiss her lawsuit against Karl and Sookham, who at some point had become her caretakers. In 2011, Paul entered Chapter 7 bankruptcy; Clifford Conine was the Chapter 7 bankruptcy trustee. Attys. Lee and Banks sought and received appointment as special counsel to investigate what interest Paul – and, by extension, the bankruptcy trustee – might have in the lawsuit. Kailash filed a motion to substitute counsel, which was granted after the trial court met with Kailash privately and determined that she had full mental capacity and was not unduly influenced. Her motion to dismiss her claims in the case was granted; however, the claims she filed against Karl and Sookham on behalf of Manmohan's succession were not dismissed.

Attys. Lee and Banks petitioned to intervene, asserting various claims against Kailash, Karl, and Sookham for conspiracy to breach the fiduciary duty owed by Kailash as the succession representative, collusion, and tortious interference. Kailash filed a motion to dismiss the petition for intervention and a motion to disqualify her former attorneys from

---

[1] Paul filed a petition of intervention in which he sought to join with the plaintiff in demanding his portion of the same relief against the defendants. The trial court denied the request to intervene. That ruling was not an issue in *Dhaliwal I*.

representing Paul and Conine in the lawsuit. The trial court granted Kailash's motion to disqualify her former attorneys from representing Paul and the trustee in the case. It also granted the motion to dismiss the petition to intervene, in part, and denied the motion in part, stating Attys. Lee and Banks could claim their privilege arising from the contingency fee contract on any funds ultimately awarded to the plaintiff.

Attys. Lee and Banks then filed a "Petition for Direct Action, Oblique Action and Revocatory Action," against Kailash, Karl, and Sookham claiming that Kailash's dismissal of her individual lawsuit against Karl and Sookham resulted in her being unable to pay her attorney fees under their contingency contract. Kailash filed a peremptory exception of no cause of action, which was denied by the trial court. Karl and Sookham filed declinatory and peremptory exceptions of *lis pendens*, *res judicata*, prescription, no right of action, no cause of action, and vagueness. The trial court granted the exceptions of no right of action and no cause of action. Attys. Lee and Banks appealed the judgments dismissing their lawsuits against Kailash, Karl, and Sookham, as well as the judgment granting the motion to disqualify them as attorneys for Paul and Conine. We affirmed the trial court judgments. *See Dhaliwal II.* Atty. Banks was later disciplined by the Louisiana Supreme Court's Office of Disciplinary Counsel regarding his actions in the matter. *See In re Banks,* 22-0073 (La. 5/13/22), 339 So. 3d 1152.

Following Kailash's death in April 2015, Karl was initially named independent administrator in his mother's succession, but was removed. Simran was then named independent administrator in Kailash's succession and succession representative in Manmohan's succession. In that capacity,

3

Simran filed a motion to dismiss Manmohan's succession's lawsuit against Karl and Sookham. As an heir to the succession, Paul filed an opposition to the motion to dismiss. Following a hearing, the trial court granted the motion to dismiss, finding that there was not enough evidence that an oral joint venture existed, that the suit was doomed to fail, and that proceeding with the lawsuit would waste the successions' assets. Paul appealed. We affirmed the trial court's judgment. *See Dhaliwal III*.

In May 2016, the bankruptcy judge signed an order providing that, upon the closing of Paul's case, the bankruptcy estate's interest in Paul's claims in his father's succession would not be abandoned and that the trustee was authorized to reopen the bankruptcy case if a meaningful judgment was rendered in the bankruptcy estate's favor.

In August 2020, Paul, acting in proper person and proceeding *in forma pauperis*, filed a "Re-stated Petition" in both of his parents' successions and in Kailash's suit against Karl and Sookham. Named as defendants were Karl, Sookham, Simran (as succession representative of both her grandparents' successions), and the attorneys for his parents' successions, Margaret Blackwell Pruitt, G. Adam Cossey, and J.P. Christiansen ("the Attorneys"). He stated that he filed a petition in 2016 to annul his mother's will and since then he had discovered "additional facts and multiple causes of action." Specifically, Paul made the following claims against the defendants:

    1) Simran: breach of fiduciary duty and loyalty, conspiracy to commit the same, and fraud and ill practices;

    2) Succession attorneys Margaret Blackwell Pruitt and G. Adam Cossey: the same as alleged against Simran, as well as legal malpractice; and

4

3) Karl: fraud, conspiracy, and undue influence.[2]

Paul also claimed that Simran and the Attorneys failed their statutory accounting duties, mismanaged the successions, allowing the successions' assets to deteriorate and lose value, paid needless expenses to maintain the successions' assets, and failed to close both successions as soon as possible.

Paul made numerous allegations against Karl, who cared for their mother while Paul served a 23-month prison term for violating federal immigration law. According to Paul, Kailash was a "captive" of Karl and that due to Karl's "domineering control" of her, her will should be annulled. Paul also accused the Attorneys of having documents, including banking records, that demonstrated that their parents owned the family business in three equal shares with Karl and that Karl converted cash from their parents' bank accounts. He asserted that Attys. Cossey and Pruitt secretly served as "dogs in the manger" in his parents' successions, while actually representing Karl as their real client. He contended that the Attorneys and Simran breached a fiduciary duty owed to him as an heir in his father's succession and a legatee in his mother's succession.[3]

The Attorneys filed peremptory exceptions of no right of action, no cause of action, and *res judicata* to the Re-Stated Petition, which were sustained following a hearing. The trial court then issued written reasons for judgment in which it stated that, since Paul filed for bankruptcy after his

---

[2] In 2015, Paul filed a lawsuit against Karl, Simran, the Attorneys, and the Attorneys' law firm in which he raised many of the same claims. The suit, *Paul Dhaliwal versus Karminder Dhaliwal*, trial court docket no. 2015-3432, was dismissed with prejudice after the trial court sustained exceptions of no cause of action, no right of action, and *res judicata*. Paul did not appeal that decision.

[3] Paul was a legatee under his mother's will wherein he was bequeathed only a partial interest in real estate located in Jackson, Mississippi.

5

father's death, all of his asserted rights arising from the father's succession constituted property of the Chapter 7 Trustee. Additionally, the trial court found that only the succession representative had a right to assert a claim belonging to the succession. As a result, Paul had neither a right of action nor a cause of action.

The trial court signed judgments in the three cases dismissing Paul's claims against the Attorneys with prejudice and without leave to amend at Paul's cost, and Paul appealed solely those judgments.[4] We affirmed the trial court's judgments finding that: 1) any right of action Paul possessed to file a claim in Manmohan's succession belonged to the bankruptcy trustee; and 2) Paul could not bring claims against the succession attorneys, because it is the succession representative that is the proper plaintiff while a succession is under administration. *See Dhaliwal IV*.

On March 10, 2021, Simran filed the following in her grandparents' respective successions:

> 1) a final accounting in Manmohan's succession which included liabilities in the form of attorney fees owed to the Attorneys, related to the administration of Manmohan's succession and *Dhaliwal II*. The liabilities exceed the assets in Manmohan's succession;
>
> 2) an accounting in Kailash's succession which included liabilities in the form of attorney fees owed to the Attorneys related to the administration of Kailash's succession and *Dhaliwal II*. The accounting includes a note stating that a prior accounting showed that Manmohan's succession owed Kailash's succession $15,138.22, but the asset was deleted from the accounting, as Manmohan's succession lacked sufficient funds to pay the debt.
>
> 3) a final tableau of distribution in Manmohan's succession, in which funds garnered from the sale of immovable property

---

[4] Similar exceptions were filed by Simran on behalf of the successions, and they were also sustained by the trial court.

belonging to his estate were distributed. Those distributions included:

> a) $10,500 to Karl for funeral expenses;
>
> b) $41,043.03 to the Attorneys for fees related to administration of the estate; and
>
> c) $41,960.54 to the Attorneys for fees related to *Dhaliwal II*.
>
> The tableau included a note that the final accounting in Manmohan's succession showed that attorney fees owed to the Attorneys related to *Dhaliwal II* totaled more than $57,562.32, and that those fees were reduced by $17,711.07 due to lack of funds in the estate; and

4) a first tableau of distribution in Kailash's succession which disbursed funds belonging to her estate to pay various debts including:

> a) $14,550.25 to the Attorneys for fees related to administration of Kailash's succession; and
>
> b) $15,110 to the Attorneys for fees related to *Dhaliwal II*.

On March 11, 2021, the trial court signed a judgment homologating the final tableau in Manmohan's succession.

On March 19, 2021, Paul filed in both successions a document styled, "Objection to Final Accounting and Tableau of Distribution Filed March 10, 2022, and Motion to Recuse and/or Disqualify Succession Counsel for Concealed Incurable Conflict of Interest; Collection/Payment of Unearned Legal Fees; Willful Accounting Failures; Conspired Breach of Fiduciary Duty; and Obstruction, if Not Spoliation of *Prima Facie* Evidence, Namely Succession Counsels' Emails with Karl Dhaliwal, Together with *Inter Alia* Supporting Memorandum." In that document Paul objected to the attorney fees listed in both estates' accountings, arguing that the Attorneys did not include hourly billing statements in his parents' successions. Paul alleged

7

fraud and ill practices, and said that the Attorneys were prohibited from recovering due to the "unclean hands doctrine." Paul sought: 1) a "proper accounting" of monies deposited in the Attorneys' accounts pertaining to the two successions or Karl; 2) "disgorgement and denial of all fees" to the Attorneys and Simran; and 3) attorney fees.

Paul also sought to have Simran removed as the succession representative and the Attorneys removed as succession counsel, for breach of fiduciary duty, fraud, and ill practices. Paul asserted that Simran and the Attorneys:

> 1) failed to provide yearly accountings in his parents' successions and that "source documents are missing, along with succession assets." Paul then stated, "No details are provided, including without limitation, receipts, deposit slips, bank account statements, reconciliations, loan histories, ledger sheets, appraisal of commercial properties, expert reports, reconciliations, etc., thereby rendering the 'final' accounting meaningless";
>
> 2) conspired to engage in and conceal conflicts of interest by:
>
>> a) secretly representing Karl and obtaining his approval to sue Paul in *Dhaliwal II*;
>>
>> b) attempting to collect unearned fees which were not disclosed in the successions' accountings and making imprudent expenses "which will be more particularly shown with discovery";
>>
>> c) omitting succession assets and claims in accountings;
>>
>> d) accepting "secret payments of attorney fees and court costs";
>>
>> e) converting succession assets and failing to prevent loss, waste, and abuse of succession assets; and
>>
>> f) "Spoliated, if not obstructed [Paul's] right to *prima facie* evidence of fraud, ill practice and willful violation of conflict rules, namely email communications [between] Atty. Pruitt and Karl [regarding] timeline of dismissal of my fiduciary suit."

8

Simran filed an opposition in both successions stating that Paul's claims made in his objection to the accountings were barred by *res judicata*. Simran argued that Paul's re-argued claims were considered and denied in Paul's 2015 suit against Karl, Simran, and the Attorneys and in *Dhaliwal IV*. Simran attached a petition filed by Paul in *Dhaliwal v. Dhailiwal*, dated November 10, 2015, in which he named Karl, Simran, and the Attorneys as defendants, alleging breaches of fiduciary duty, collusion, and "mental torture." In the petition, Paul also complained about the Attorneys' fees related to Kailash's succession.

Simran also argued that the failure to file annual accountings in either succession is not grounds for removal of a succession representative. Simran stated that Kailash's succession is under independent administration and an independent administrator is not required to file an interim accounting. Simran argued that Paul never filed a motion to demand an annual accounting, as provided in La. C.C.P. art. 3331. In the case of Manmohan's succession, Simran stated that she was required to file an annual accounting, but her failure to do so is not grounds for her removal as succession representative, because the trial court did not order her to do so.

Paul replied and stated that he had repeatedly asked for accountings in both successions "to no avail." He stated that his parents' home and his father's car were left to deteriorate and lose value. Paul also claimed that funds from the succession were "accidentally" deposited in Simran's personal account, showing that she has not prudently managed the successions.

On March 22, 2021, the trial court signed a judgment homologating the first tableau of distribution in Kailash's succession.

9

On April 5, 2021, Paul filed a request in both successions for Atty. Pruitt to be issued a subpoena *duces tecum* ordering her to produce emails between herself and Karl related to the successions and her billings in the successions, documents related to legal fees Karl paid to her, and documents detailing any funds paid to the Attorneys' law firm related to court costs paid in the successions. The Attorneys complied with Paul's request and provided him with their bills related to the successions.

On April 19, 2021, Paul filed in both successions a "Motion to Compel Discovery on Objections to Final Accounting and Discovery on Objections to Tableau of Distribution with Supporting Memorandum." In that motion, Paul stated that he was entitled to depose the Attorneys relative to their billings in his parents' successions and any monies received from Karl. Simran opposed the motion to compel stating that it was not the correct procedural posture under La. C.E. art. 508 and Paul could not meet that burden required by Article 508. The Attorneys asked that the trial court sanction Paul.

On June 1, 2021, Paul filed a "Motion and Memorandum to Compel Discovery and for La. Code of Evidence Article 508 Hearing to Depose Succession Counsel." Paul argued that La. C.E. art. 508 was inapplicable, because succession counsel did not have "clean hands," and were not entitled to legal fees "while practicing and concealing conflicts of interest and collusion." Paul stated that court documents showed that the Attorneys paid more than $30,000 in court costs "to Karl on my behalf," but there is no documentation showing from where that money came. Paul again alleged that Atty. Pruitt and Karl improperly communicated regarding the successions and that Atty. Christiansen represented Karl in an unrelated suit.

10

Simran opposed Paul's motion arguing that Paul could not meet the burden provided in La. C.E. art. 508 in order to depose succession counsel, because: 1) it is barred by *res judicata*, as Paul raised the same claims in an earlier suit; 2) the "clean hands" doctrine is inapplicable to the case; 3) Paul's questioning of succession counsel would delve into confidential matters between Simran, the successions' representative and client of the Attorneys; 4) Paul has never been able to show evidence of conflict, collusion, breach of fiduciary duty, or cover up, and his claims are speculative; and 5) the information he seeks may be obtained through other means, such as deposing Simran, which Paul had not done. Simran again asked for an award of sanctions.

Paul replied and argued that his claims were not barred by *res judicata*, because the trial court had not ruled on whether the Attorneys can be paid legal fees for "violating professional rules…including ignoring annual succession accounting fees, collusion, forgeries, etc." Paul stated, "Cross-examination of succession counsel on their itemized hourly billings and 'privileged' documents/communications proves such wrongdoing." Paul contended that there was no legal support for Simran's argument that the clean hands doctrine was inapplicable or that the matters were confidential when the Attorneys "violated professional rules."

Paul then sought to depose Simran and requested that she produce bank records and cancelled checks related to the successions and provide reasons why certain deposits and payments were made. On July 30, 2021, Paul filed a motion to hold Simran in contempt and to compel discovery regarding the successions' accountings. Paul stated that Simran refused to

11

comply with a subpoena *duces tecum* issued on July 14, 2021, which ordered her to provide documents "missing from responses to my discovery."

On September 7, 2021, Paul filed a request with the trial court for a subpoena *duces tecum* ordering the Louisiana Supreme Court Office of Disciplinary Counsel ("ODC") to provide him with cancelled checks signed by Karl payable to the Attorneys and/or their law firm, and all communications pertaining to the same. He also requested that an additional subpoena *duces tecum* be issued to Simran to provide documents related to: 1) any agreement regarding attorney fees in the successions; 2) any cancelled checks, receipts, or evidence of payments to Atty. Pruitt signed by Karl; 3) any documentation of the payment of court costs related to the successions; 4) all responsive documents to written discovery requests Simran "has been working on for [the] past few months"; and 5) communications, notes, and files pertaining to conflicts of interest of the Attorneys.

The ODC objected to the subpoena arguing confidentiality, that complying with the subpoena was burdensome, and that the documents are in the possession of Paul's counsel, Atty. Banks, or Atty. Banks' counsel, Attorney Joseph Ward, or were a matter of public record. The ODC did provide email threads between Atty. Pruitt and Robert Kennedy, which included copies of 11 checks, some of which were introduced into evidence at Atty. Banks' disciplinary hearing. The checks are made out to Atty. Pruitt and are signed by Kailash and Karl. The checks are dated prior to Kailash's death. The account holders are listed as Karl and Kailash. The checks state that they are for "1200.010."

12

On September 27, 2021, the trial court held a hearing on the various motions. Simran testified regarding the estate accounting in Manmohan's succession. Paul questioned her about whether she got court approval for repairs made to her grandparents' home. Paul also questioned Simran about the checks signed by Kailash and Karl made out to the Attorneys. Simran was unfamiliar with the checks and stated that those were regarding Manmohan's succession. Atty. Pruitt clarified that the number "1200.010" was related to the Attorneys' representation of Kailash in *Dhaliwal I* and not to either succession. Atty. Pruitt stated that she represented Kailash in that case, which is why it is not reflected in any succession accounting. Atty. Pruitt stated that she has not been paid for any of the work she has done in any succession proceeding. The trial court sustained the objections filed by the ODC and took the other matters under advisement.

On October 17, 2021, the trial court signed a judgment denying Paul's "Objection to Final Accounting and Tableau of Distribution Filed March 10, 2021" and his "Motion to Recuse and/or Disqualify Succession Representative and Succession Counsel." On November 9, 2021, pertinent to these appeals, the trial court signed a judgment denying Paul's "Motion to Compel Discovery and for Louisiana Code of Evidence Article 508 Hearing to Depose Succession Counsel." Paul now appeals.

**DISCUSSION**

Assignment of Error No. One: Whether the trial court erred when it denied appellant's objections to the successions' accountings, "which did not meet the requirements of La. C.C.P. art. 3333, and homologated vague, false, incomplete, and inaccurate accountings with no supporting documents."

Paul again argues that his mother's succession does not include a detailed descriptive list. Paul states that neither of his parents' successions

shows documentation required by La. C.C.P. art. 3333 and does not show the source of the funds and identity of the persons receiving payments from the successions. Paul contends that Simran never produced receipts for any repairs made to her grandparents' home, the costs were not produced in any accounting, and she did not get court approval to make the repairs. Paul complains that there is no documentation regarding a $15,138.22 debt that Manmohan's succession owes Kailash. Paul again argues that Simran mismanaged her grandparents' succession and allowed the assets in both to decrease in value.

Appellees argue that Paul has improperly raised an objection to the accountings under La. C.C.P. art. 3333, because he did not first raise that argument with the trial court and cannot do so for the first time on appeal. Appellees argue that, as an independent administrator in Kailash's succession, Simran was not required to file an accounting or detailed descriptive list. Appellees state that the accountings are complete and the record shows how the accountings track the changes in accounts and property, including assets and liabilities.

Appellees explain that the accounting in Manmohan's succession included a liability in the amount of $30,276.43, which was a mortgage on Manmohan's community property home that he shared with Kailash, making it a community obligation. The debt was originally not classified as a community debt and was fully satisfied by Kailash's succession. A later accounting in Manmohan's succession then contained a liability owed to Kailash's succession for $15,138.22, which represents 50% of the $30,276.43 community obligation. Appellees state that Simran was not

14

required to get court approval simply to list the debt on the final accounting of Manmohan's succession.

La. C.C.P. art. 3333 states:

An account shall show the money and other property received by and in the possession of the succession representative at the beginning of the period covered by the account, the revenue, other receipts, disbursements, and disposition of property during the period, and the remainder in his possession at the end of the period.

Paul's argument that Simran did not include "source documents" in the final accounting in Manmohan's succession does not constitute an objection under La. C.C.P. art. 3333, as that article does not require that such documents be included in any accounting. Paul did not raise an objection to the accountings under La. C.C.P. art. 3333 with the trial court, and he cannot do so for the first time with this court. As a general rule, appellate courts will not consider issues raised for the first time on appeal. *JPS Equip., LLC v. Cooper*, 50,506 (La. App. 2 Cir. 2/24/16), 188 So. 3d 1106.

Paul's argument that Simran paid an unauthorized debt to Kailash's succession is unfounded. The accounting from both successions show that a community debt was erroneously classified as a separate obligation and was paid in full by Kailash's succession. The error was corrected and 50% of the amount was included as an obligation owed to Kailash's succession in later accountings. This assignment of error lacks merit.

Assignment of Error No. Two: Whether the trial court erred when it approved and homologated a final accounting which did not include a "credit" for attorney fees "secretly" paid to the succession counsel with "unclean hands" by engaging in: "aiding and concealing conflicts of interest, false accounting, breach of fiduciary duty, as well as, violation of statutory duties of a succession representative."

Paul argues that the attorney fees shown in the accounting are incomplete and the record includes no attorney fee agreement. Paul again

15

asserts that the unclean hands doctrine is applicable here for breaches of professional and fiduciary duties. Paul references nine "secret" checks that were paid to Atty. Pruitt by Karl which were not included in any accounting. Paul states that some of the checks are unaccounted for, and the trial court erred in approving the accounting without seeing an attorney agreement or the total amount of attorney fees received. Paul alleges that his mother's signature was forged on the checks provided by ODC. Paul claims that the Attorneys mailed billings to Karl at his home address "in order to obtain Karl's approval of what was done (and charged for) in the suit against him, before such bills were paid." Paul alleges that Atty. Pruitt lied in discovery responses.

Appellees argue that the unclean hands doctrine has no application to the issues on appeal, because the doctrine concerns the nullity of contracts, legal counsel is not a plaintiff in these succession proceedings, and there is no alleged breach of contract claim. Appellees contend that lack of a written contract for legal representation does not invalidate the accountings, because an oral contract for legal representation is valid.

Appellees contend that Paul does not have standing to challenge the existence of a contract for legal representation in these successions, because he is not a party to the contract; it is only the administrator who may bring such a claim, and Simran does not deny the existence of an oral contract for legal representation with the Attorneys. Appellees point out that Paul did not cross-examine Simran about the contract for legal representation during the September 27, 2021, hearing. Appellees further point out that Paul never sought to challenge the appropriateness of the fees and the representation.

16

Appellees state that the successions have been before this court five times, there were two additional lawsuits in which either succession was a party, and Paul filed numerous objections and continuances in the successions, which explains the legal fees.

Appellees aver that there have never been secret payments in the form of nine checks from Karl to the Attorneys in his father's succession. The Attorneys state that there were nine checks in the amount of $7,500, paid by Kailash during her lifetime to the Attorneys for personally representing her in *Dhaliwal I*.

The clean hands doctrine, also referred to as the unclean hands doctrine, is recognized as a defense in Louisiana. The doctrine holds that a person cannot maintain an action if, in order to establish his cause of action, he must rely in whole or in part, on any illegal or immoral act or transaction to which he is a part. *See Bossier Par. Sch. Bd. v. Pioneer Credit Recovery, Inc.*, 49,525 (La. App. 2 Cir. 1/14/15), 161 So. 3d 1007.

The unclean hands doctrine is inapplicable here. The Attorneys have a contract for legal representation with Simran as the successions' representative. Furthermore, the Attorneys are not parties to these proceedings. Paul references nine "secret" checks, but the only checks produced are those that Kailash wrote during her lifetime to the Attorneys as payment for legal representation in *Dhaliwal I*. Kailash was free to spend her money how she wanted to during her lifetime, and the funds represented by those checks do not form part of her estate. Paul argues that the checks are evidence of collusion between Karl and the Attorneys simply because Karl signed the checks with Kailash and the payments to the Attorneys came

17

out of their joint account.  The existence of the checks does not amount to evidence of fraud or collusion.  This assignment of error lacks merit.

Assignment of Error No. Three: Whether the trial court erred when it denied appellant's motion for leave to subpoena and depose succession counsel limited to their billings.

Paul argues that he should be able to depose the Attorneys regarding their billings to the successions and why the attorney fees already paid were not credited to the succession.  Paul argues his mother is deceased, so attorney-client privilege does not apply.

Appellees state that the trial court was correct to deny Paul's 508 motion, because the deposition sought confidential information protected by attorney-client privilege, the information is not essential to his claim, and the information may be obtained through the deposition of non-attorneys.  Appellees contend that La. C.E. art. 508 strictly limits the issuance of subpoenas to compel the testimony of an attorney where the information sought was obtained in the course of representation of a client.  Appellees argue Paul's Article 508 motion is barred by *res judicata* and represents Paul's attempt to relitigate claims of fraud and collusion on behalf of the Attorneys in the 2015 case where Paul sued his brother.

Appellees also argue there is no basis for Paul's fraud allegations which would justify granting a 508 motion.  Appellees further argue that the death of a client does not terminate attorney-client privilege unless the issue involves a decedent's capacity to make a donation, an issue that is not before the court.

La. C.E. art. 508(A) states:

Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any civil or juvenile proceeding, including pretrial discovery, or in an administrative

18

investigation or hearing, where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless, after a contradictory hearing, it has been determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:

> (1) The information sought is essential to the successful completion of an ongoing investigation, is essential to the case of the party seeking the information, and is not merely peripheral, cumulative, or speculative.

> (2) The purpose of seeking the information is not to harass the attorney or his client.

> (3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.

> (4) There is no practicable alternative means of obtaining the information.

In ruling upon discovery matters, the trial court is vested with broad discretion, and, upon review, an appellate court should not disturb such rulings absent a clear abuse of discretion. *Liles v. Great W. Cas. Ins. Co.*, 54,565 (La. App. 2 Cir. 7/13/22), 342 So. 3d 1160.

Here, Paul has alternative means of garnering the privileged information he seeks rather than deposing the Attorneys. He could have sought the billing information through Simran, but he did not do so prior to filing his 508 motion. Furthermore, what Paul seeks is speculative, because he has shown no evidence of fraud or collusion on the part of the Attorneys, Simran, or Karl. There is nothing in the record to suggest that this is anything but a fishing expedition in which Paul hopes to unearth favorable evidence. The trial court did not abuse its discretion here and this assignment of error lacks merit.

<u>Assignment of Error No. Four</u>: Whether the trial court erred when it denied appellant's motion to recuse and/or disqualify succession counsel and the succession representative for violations of fiduciary duties and statutory obligations.

Paul argues that Simran should be removed as succession representative, because she: 1) failed to file a detailed descriptive list for several years in Kailash's succession; 2) allowed her grandparents' house to remain unoccupied and her grandfather's car to deteriorate and lose value; 3) failed to file annual accountings every year in each succession; 4) failed to close the succession as soon as advisable; 5) failed to disclose assets and payments made on behalf of the successions, including "secret" attorney fees; and 6) failed to get court approval to pay expenses in each succession. Paul also states that Simran has a conflict of interest, because she is or was an employee of her father and Paul is her uncle. Paul does not state what relief he wants from this court.

Appellees argue that allegations of breach of fiduciary duty against Simran as administrator are *res judicata*. Appellees state that Paul alleged in his "Re-Stated Petition" that Simran breached her fiduciary duties by failing to timely file accountings and engaging in conflicts of interest and collusion. Appellees contend that Simran filed an exception of *res judicata* in response, which was granted and which Paul did not appeal. Appellees also state that Paul did not argue his motion to remove Simran as estate representative at the September 27, 2021, hearing and his assignment of error should be stricken.

Appellees argue that Simran preserved her grandparents' home by renting it to persons who performed caretaking duties after Kailash vacated the property in 2015, and it sold in 2020. Appellees again state that failing

20

to file a detailed descriptive list or accounting is not a breach of fiduciary duty and does not warrant removal of Simran as administrator. Appellees argue Simran was not ordered to file an accounting by the trial court. Appellees argue that Simran has worked prudently to close Manmohan's succession, and the failure to close the succession as soon as possible is due to Paul's various motions, objections, continuances, and appeals. Appellees ask that this court affirm the trial court's rulings.

Paul has on multiple occasions alleged fraud, breach of fiduciary duty, and ill practices on the part of the Attorneys and Simran without showing any proof. Apart from his claims that Simran did not file a detailed descriptive list every year in Kailash's succession and his objections to the Attorneys' billings on the most-recently filed accountings in both successions, his claims were previously raised and considered by the trial court and this court. *See Dhaliwal IV.* He is barred from raising them again, and they will not be considered by this court. The issue regarding the Attorneys' fees was discussed above. This court will now consider solely Paul's argument that Simran should have been removed as succession representative, because she did not file a detailed descriptive list in Kailash's succession.

Absent an abuse of discretion, the district court's decision regarding removal of a succession representative will not be disturbed on appeal. *In re Succession of LeBouef*, 13-0209 (La. App. 1 Cir. 9/9/14), 153 So. 3d 527.

Kailash's succession is under independent administration. The independent administration of estates is governed by La. C.C.P. arts. 3396, *et seq*. La. C.C.P. art. 3396.5 provides that an independent administrator shall have all the rights, powers, authorities, privileges, and duties of a

21

succession representative, but without the necessity of delay for objection, or application to, or any action in or by, the court. Before the succession can be closed, a judgment of possession rendered, and the independent administrator discharged, there shall be filed an inventory or sworn detailed descriptive list of assets and liabilities of the estate verified by the independent administrator. La. C.C.P. art. 3396.18(A). An independent administrator is not required to filed a detailed descriptive list prior to the close of the succession unless ordered to do so by the court.

Simran was appointed independent administrator in her grandmother's succession, and as such she has the freedom to act in Kailash's succession without first getting approval from the trial court. She is not required to file a detailed descriptive list until prior to the closing of her grandmother's succession. Kailash's succession remains open and still under administration.

This court finds Paul's complaints regarding attorney fees and the fact that neither succession has closed to be disingenuous. Every time he files a repetitive motion or petition with the trial court, succession counsel must respond, which increases the attorney fees and further delays the closing of each succession. The trial court did not abuse its discretion here, and this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgments are affirmed. Costs are assessed to the appellant.

**AFFIRMED.**

22